**CENTRAL SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**STEMMONS NORTHWEST BANK, N.A., Tritexas Mortgage Corporation, James M. Marshall, and Harold Peek, Appellees.**

No. 05–91–02090–CV.

Court of Appeals of Texas, Dallas.

Dec. 31, 1992.

Donald O. Walsh, Dallas, for appellant.

John R. Riggs, Graham, Bright & Smithorney, John Andrew Martin, Norton Rosenthal, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellees.

Before BAKER, BURNETT and KAPLAN [1], JJ.

1. Justice Kaplan participated in the submission of the cause but not the issuance of the opinion.

## OPINION

BAKER, Justice.

Central Savings and Loan Association sued Stemmons Northwest Bank, N.A., Tri-Texas Mortgage Corp., James M. Marshall, and Harold Peek for failing to honor the terms of a letter of credit and a settlement agreement. The trial court granted summary judgment for Stemmons, TriTexas, Marshall, and Peek on the causes of action forming the basis of Central's appeal. In eight points of error, Central contends the trial court erred in granting appellees' summary judgment and in denying Central partial summary judgment. We overrule Central's points of error. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Central purchased thirty mortgage loans from TriTexas. TriTexas and Central entered into a mortgage servicing agreement. TriTexas agreed to collect the debt service payments and provide administrative support to Central.

A dispute arose over the availability of private mortgage insurance for nine of the loans. Central and TriTexas entered into a settlement agreement. Under this agreement TriTexas agreed to act as the mortgage insurer for the nine loans. TriTexas delivered to Central a letter of credit to secure TriTexas's obligations.

Stemmons, the issuer of the letter of credit, told Central, the beneficiary, that it would not renew the letter of credit. Central demanded TriTexas comply with its obligations under the settlement agreement. TriTexas declined to do so. Central presented the letter of credit to Stemmons. Stemmons refused to honor it.

Central later learned that Stemmons and Peek [2] had entered into a letter of credit indemnification agreement. Stemmons agreed to follow Peek's instructions about the letter of credit in exchange for Peek's agreeing to repay Stemmons for any expenses or claims arising from the letter of credit. TriTexas also refused to turn over

to Central fifteen tax escrows over which it had control under the servicing agreement. These tax escrows related to defaulted and foreclosed loans.

Stemmons filed an interpleader and tendered the face amount of the letter of credit into the registry of the court. Three months later, TriTexas turned over to Central the principal portion of the tax escrows.

## CENTRAL'S CONTENTIONS

Central contends Stemmons breached its common law duty of good faith and fair dealing by dishonoring the letter of credit. Central contends Stemmons also acted willfully, fraudulently, and in bad faith. Central claims Stemmons conspired with Peek to willfully and maliciously interfere with the letter of credit and breach the duty of good faith and fair dealing Stemmons owed Central. Because of this alleged conduct, Central contends Stemmons and Peek are liable for punitive damages.

Central contends Marshall [3] is liable for punitive damages for tortiously interfering with the servicing agreement between TriTexas and Central. Central claims Marshall caused the breach of fiduciary duties that TriTexas owed Central under the servicing agreement. Central contends that Marshall is jointly and severally liable with TriTexas for all damages caused by the breaches of fiduciary duty. Finally, Central claims that all appellees are liable for punitive damages because their concerted actions constitute civil conspiracy.

## PROCEDURAL HISTORY

In the trial court Central alleged, in addition to the tort claims that are the subject of this appeal, a cause of action against Stemmons for breach of contract for Stemmons's dishonor of the letter of credit. Central alleged claims for breach of contract and conversion against TriTexas because TriTexas did not renew the letter of credit or turn over the escrow funds.

---

**2.** Harold Peek was a shareholder officer, director, and employee of TriTexas.

**3.** James M. Marshall was a major shareholder in TriTexas and one of its agents.

The parties settled the breach of contract and conversion claims, and the court dismissed them with prejudice. During the pendency of the suit, Stemmons paid the face amount of the letter of credit to Central. TriTexas turned over the funds in the fifteen tax escrow accounts to Central.

Central asserted the tort claims that are the subject of this appeal to recover punitive damages against the appellees. The trial court granted appellees summary judgment on all Central's claims for punitive damages.

## STANDARD OF REVIEW—SUMMARY JUDGMENT

Because this is a summary judgment case, we apply the following standards:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the nonmovant as true.

3. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

See *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The summary judgment rule does not provide for a trial by deposition or affidavit. The rule provides a method for summarily ending a case that involves only a question of law and no genuine material fact issue. See *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962). The trial court's duty is to determine if there are any material fact issues to try, not to weigh the evidence or determine its credibility and try the case on affidavits. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The purpose of the summary judgment rule is to eliminate patently unmeritorious claims or untenable defenses. The rule is not intended to deprive the litigants of their right to a full hearing on the merits of any real issue of material fact. See *Gulbenkian*, 252 S.W.2d at 931.

■ A movant must show its entitlement to summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of its cause of action or defense as a matter of law. See *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). The trial court may not grant summary judgment by default against the nonmovant for failing to respond to the motion when the movant's summary judgment proof is legally insufficient. See *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

■ To show its right to a summary judgment, a defendant must either disprove an essential element of the plaintiff's cause of action as a matter of law or establish all elements of its defense as a matter of law. See *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Pinckley v. Gallegos*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied).

■ A nonmovant need not answer or respond to a motion for summary judgment to contend on appeal that the grounds expressly presented by the movant's motion are insufficient as a matter of law to support summary judgment. However, the nonmovant may not raise any other issues as grounds for reversal. *City of Houston*, 589 S.W.2d at 678.

■ Except to attack the legal sufficiency of the movant's grounds for summary judgment, the nonmovant must expressly present to the trial court any reason for avoiding the movant's entitlement to summary judgment. The nonmovant must present summary judgment proof when necessary to show a fact issue. The nonmovant must expressly present to the trial court in a written answer or response to the motion those issues that would defeat the movant's right to summary judgment and, failing to do so, may not assign them on appeal as error. TEX.R.CIV.P. 166a(c); *City of Houston*, 589 S.W.2d at 678–79.

## CONTRACT VERSUS TORT

■ The principles of contract and tort causes of action are well settled. Howev-

er, it is often difficult in practice to determine whether a plaintiff's cause of action sounds in contract or tort. To determine whether the claim is one for contract or tort, we look to the substance of the cause of action and not the way the plaintiff pleads it. *International Printing Pressman & Assistant's Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 735 (1946).

The parties' contractual relationship may create duties under both contract and tort law. *See Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947). A party's actions may breach duties in contract or tort alone or simultaneously in both. The nature of the injury usually determines which duty or duties are breached. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). When the injury is only the economic loss to the subject of a contract itself, the action sounds only in contract. *See Mid–Continent Aircraft Corp. v. Curry County Spraying Serv.*, 572 S.W.2d 308, 312 (Tex.1978).

Breach of contract cannot support recovery of exemplary damages. *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986) (per curiam); *Jim Walter Homes*, 711 S.W.2d at 618. Gross negligence in the breach of contract will not entitle an injured party to exemplary damages because even an intentional breach will not. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981). To support an award of exemplary damages, a plaintiff must prove a distinct tortious injury with actual damages. *Jim Walter Homes*, 711 S.W.2d at 618; *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 745 (Tex.1986).

### THE LETTER OF CREDIT

In its first point of error, Central claims the trial court erred in granting Stemmons summary judgment and in denying Central partial summary judgment on Central's claim against Stemmons for punitive damages because Stemmons breached the common law duty of good faith and fair dealing it owed to Central under the letter of credit.

In its second point of error, Central contends it was error to grant Stemmons summary judgment and deny Central partial summary judgment on Central's claim for punitive damages against Stemmons because Stemmons's conduct was willful, in bad faith, and fraudulent.

In its third point of error, Central contends the trial court erred in granting Stemmons and Peek summary judgment and in denying Central's partial summary judgment for punitive damages because Stemmons and Peek conspired to interfere with the letter of credit and the duty of good faith and fair dealing owned by Stemmons to Central under the letter of credit.

### A. The Common Law Duty of Good Faith and Fair Dealing

Central contends there was a special relationship between it and Stemmons created by the letter of credit. Central argues that out of this special relationship there arose the common law duty of good faith and fair dealing. Central contends that Stemmons, by agreeing in the indemnification agreement to follow Peek's instructions about the letter of credit in exchange for Peek's indemnifying Stemmons for any claims arising out of the letter of credit, dishonored the letter of credit and breached the duty of good faith and fair dealing.

The Texas Supreme Court has rejected the implication of a general duty of good faith and fair dealing in all contracts. *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983). However, the duty of good faith and fair dealing in the performance of a contract can exist under the Uniform Commercial Code as part of every commercial contract. *See* Tex.Bus. & Com. Code Ann. § 1.203 (Vernon 1968). This duty also can exist at common law where a "special relationship" exists between the parties to a contract. *See Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987), *modified on other grounds sub nom. Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1991). At common law, the breach of the duty of good faith and fair dealing gives

rise to a tort cause of action and the right to recover both actual and punitive damages. *See Arnold,* 725 S.W.2d at 168; *see also Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex.1988).

The "special relationship" cause of action in tort for breach of the duty of good faith and fair dealing does not extend to ordinary commercial contractual relationships. Absent an *Arnold* "special relationship," the duty to act in good faith is contractual in nature, and its breach does not amount to an independent tort. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 595 n. 5 (Tex.1992); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 481 (Tex.App.—Corpus Christi 1989, writ denied).

Where the Uniform Commercial Code governs the commercial contract between the parties, section 1.203 of the Texas Uniform Commercial Code implies the duty of good faith. *See Adolph Coors Co.,* 780 S.W.2d at 481. The failure to act in good faith under section 1.203 does not state an independent cause of action. *Adolph Coors Co.,* 780 S.W.2d at 482. A breach of this implied duty under the code gives rise only to a cause of action for breach of contract. *See Adolph Coors Co.,* 780 S.W.2d at 482.

Central acknowledges that current Texas law does not recognize a common law duty of good faith and fair dealing duty in most contracts or business transactions. *See Adolph Coors Co.,* 780 at 482. Central also concedes there are no Texas cases that consider whether such a duty arises out of the relationship between the issuer of a letter of credit and the beneficiary. However, Central contends that this Court should extend that common law duty in a letter of credit situation.

Thus far, the Texas Supreme Court has recognized a common law duty for a breach of good faith and fair dealing only in the limited circumstances where a "special relationship" exists between the parties to a contract. *See Aranda,* 748 S.W.2d at 212; *Arnold,* 725 S.W.2d at 167. Absent an *Arnold* "special relationship," the duty to act in good faith is contractual in nature,

and its breach does not amount to an independent tort. *Adolph Coors Co.,* 780 S.W.2d at 481; *Transcontinental Gas Pipeline Co. v. American Nat'l Petroleum Co.,* 763 S.W.2d 809, 820 (Tex.App.—Texarkana 1988) (per curiam), *rev'd on other grounds,* 798 S.W.2d 274 (Tex.1990).

Thus far, the supreme court has found such a "special relationship" arises only in the context of an insured and its insurer under an insurance policy because of the parties' unequal bargaining power and the nature of insurance contracts that would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. *See Arnold,* 725 S.W.2d at 167; *see also Aranda,* 748 S.W.2d at 212.

Thus far, Texas courts have held that the "special relationship" necessary to create a common law duty to act in good faith does not apply to the relationship of: (1) supplier-distributor, *Adolph Coors, Co.,* 780 S.W.2d at 481; (2) mortgagor-mortgagee, *Lovell v. Western National Life Insurance Co.,* 754 S.W.2d 298, 303 (Tex.App.—Amarillo 1988, writ denied); (3) creditor-guarantor, *Federal Deposit Insurance Corp. v. Coleman,* 795 S.W.2d 706, 709 (Tex.1990); (4) lender-borrower, *Nance v. Resolution Trust Corp.,* 803 S.W.2d 323, 333 (Tex.App.—San Antonio 1990), *writ denied per curiam,* 813 S.W.2d 154 (1991); or (5) franchisee-franchisor, *Crim Truck & Tractor,* 823 S.W.2d at 596.

Central contends the standby letter of credit created a "special relationship" between it and Stemmons. Central articulates no factual claims causing this special relationship other than the relationship of Central as the beneficiary and Stemmons as the issuer of the letter of credit. We find no summary judgment evidence that supports any other interpretation of the relationship of the parties. There is no evidence of any long-standing arrangement between them or that this transaction was anything more than an arms-length transaction between business entities. Special relationships arise where there is an element of trust necessary to accomplish the

goals of the undertaking or when the courts have declared the existence of a special relationship because of an imbalance of bargaining power. *See English*, 660 S.W.2d at 524 (Spears, J., concurring); *Nance*, 803 S.W.2d at 332–33.

■ Because one business entity trusts another and relies on their contractual promise to perform the contract does not cause a special relationship. Neither does the position of the parties to a letter of credit cause an imbalance of bargaining power. We conclude that the relationship of Central as beneficiary and Stemmons as issuer in the letter of credit is an ordinary commercial contractual relationship and does not constitute the "special relationship" necessary to give rise to a common law duty of good faith and fair dealing. We overrule Central's first point of error.

### B. Fraud

Central contends Stemmons acted willfully, fraudulently, and in bad faith because Stemmons did not disclose to Central the terms of the indemnification agreement between Stemmons and Peek. Central contends that Stemmons "secretly" entered into this agreement with Peek and that Stemmons is liable for exemplary damages for this fraudulent concealment of the terms of the Peek indemnity agreement. The gist of Central's argument is that Stemmons aggravated its dishonor of the letter of credit by fraudulently concealing the terms of the indemnity agreement. Central contends these circumstances entitle it to punitive damages. We disagree.

■ Generally, failure to perform the terms of the contract yields contract liability, not tort liability. However, a contract to perform in the future is actionable fraud when a party makes it with the intention, design, and purpose of deceiving and with no intention of performing. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). A party's failure to perform the contract, standing alone, is no evidence of that party's intent not to perform at the time the party made the contract. *Crim Truck & Tractor Co.*, 823

S.W.2d at 597; *Spoljaric*, 708 S.W.2d at 435.

When a party suffers only economic injury to the subject matter of the contract, the action sounds in contract, not in tort. *Jim Walter Homes*, 711 S.W.2d at 618. Again, a plaintiff must allege and prove distinct actual damages attributable to the fraud and not attributable to the breach of contract for the claim to survive. *See Schindler v. Austwell Farmers Coop.*, 829 S.W.2d 283, 290 (Tex.App.—Corpus Christi 1992), *aff'd as modified per curiam*, 841 S.W.2d 853 (1992).

■ A letter of credit transaction involves three separate and independent undertakings: one between the issuer and the beneficiary, one between the issuer and its account party, and the underlying obligation between the account party and the beneficiary. No party to one contract is responsible for performance of the obligations of another contract. *See Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 112 (Tex.1978); *Dallas Bank & Trust v. Commonwealth Dev. Corp.*, 686 S.W.2d 226, 231 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

■ The indemnification agreement between Peek and Stemmons was part of the underlying agreement between Stemmons, TriTexas, and others. Stemmons issued the letter of credit at the request of TriTexas as required by the settlement agreement between TriTexas and Central. Thus, Peek's guaranty and indemnification agreement was part of one of the customary and usual contractual undertakings in a letter of credit transaction.

The record reflects Peek had previously guaranteed the original $112,000 letter of credit. Stemmons issued the $56,000 letter of credit in April 1988. Stemmons and Peek entered into the indemnification agreement in September 1989. There is no summary judgment evidence that shows or raises a fact issue that when Stemmons executed and delivered the letter of credit in April 1988, it did so with no intention of performing. A party's failure to perform the contract, standing alone, is no evidence of that party's intent not to perform at the

time the party made the contract. *Crim Truck & Tractor Co.*, 823 S.W.2d at 597. Central alleges only economic injury to the subject matter of the contract. Central does not allege or show distinct actual damages attributable to any alleged fraud. The cause of action sounds in contract, not in tort. *See Jim Walter Homes*, 711 S.W.2d at 618. Central alleged fraudulent concealment in conclusory terms. The record does not have any summary judgment evidence showing Stemmons had a duty to disclose to Central the terms of the indemnification agreement with Peek. Nor does the record contain any summary judgment evidence that Stemmons had a fixed purpose to conceal the wrong. *See Dougherty v. Gifford*, 826 S.W.2d 668, 673 (Tex.App.—Texarkana 1992, no writ). We overrule Central's second point of error.

## C. Conspiracy to Intentionally Interfere with the Letter of Credit

Central contends that Peek and Stemmons conspired to tortiously interfere with the letter of credit and the duty of good faith and fair dealing Stemmons owed to Central under the letter of credit.

We have already held there is no common law duty of good faith and fair dealing between the issuer and beneficiary of a letter of credit. We must decide whether Central may claim punitive damages for the alleged conspiracy between Stemmons and Peek to tortiously interfere with the letter of credit.

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Adolph Coors Co.*, 780 S.W.2d at 486. The elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

The gist of a civil conspiracy is the damage resulting from commission of a wrong that injures another and not the conspiracy itself. *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968). There is no independent liability for civil conspiracy. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex.App.—Dallas 1989, writ denied).

A plaintiff establishes a case of wrongful interference with a contract by showing that: (1) a contract existed that is subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss occurred. *Futerfas v. Park Towers*, 707 S.W.2d 149, 161 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Liability for tortious interference is founded only on the acts of an interfering third party. *Schoellkopf*, 778 S.W.2d at 902. One cannot tortiously interfere with one's own contract. *Frost Nat'l Bank v. Matthews*, 713 S.W.2d 365, 369 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.). Because Stemmons was a party to the letter of credit, it could not, as a matter of law, tortiously interfere with the letter of credit. *Frost Nat'l Bank*, 713 S.W.2d at 369.

A plaintiff cannot recover for tortious interference with a contract or with business relations if the allegedly interfering third party acted to protect his own legitimate interest. *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 91 (Tex.1976), *overruled on other grounds*, *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989). A financial interest superior to that of one of the parties to the contractual or business relationship is one such legitimate interest. *Davis v. Lewis*, 487 S.W.2d 411, 414 (Tex.Civ.App.—Amarillo 1972, no writ). Stock ownership is a superior financial interest that will trigger the privilege. *Consolidated Petroleum Indus., Inc. v. Jacobs*, 648 S.W.2d 363, 367 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). Also, an agent is not liable for interference with his principal's business relations. *Baker v. Welch*, 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, writ dism'd). Where a finan-

cial interest privilege or principal agent relationship exists, there can be no tortious interference with a contract as a matter of law. *Schoellkopf*, 778 S.W.2d at 903.

■ The remaining question is whether, because of the indemnification agreement, Peek tortiously interfered with the letter of credit between Stemmons and Central. Peek's summary judgment evidence showed he was a shareholder, president, director, employee, and agent of TriTexas. Central did not controvert this summary judgment evidence.

Because Peek was a stockholder, president, director, employee, and agent of Tri-Texas, there can be no tortious interference as a matter of law. *Schoellkopf*, 778 S.W.2d at 903. Peek and Stemmons could not have conspired to tortiously interfere with the letter of credit. We overrule Central's third point of error.

## THE SERVICING AND SETTLEMENT AGREEMENTS

In its fourth point of error, Central claims TriTexas, as an insurer, is liable for punitive damages because TriTexas breached a common law duty to deal fairly and in good faith with Central as TriTexas's insured. In its fifth point of error, Central claims Peek is liable for punitive damages because Peek tortiously interfered with the settlement agreement between Central and TriTexas and with TriTexas's duty of good faith and fair dealing to Central under the settlement agreement. In its sixth point of error, Central contends TriTexas is liable for punitive damages because TriTexas breached its fiduciary duty to Central when TriTexas refused to turn over the tax escrow accounts.

### A. Breach of Duty of Good Faith and Fair Dealing

■ Central contends the settlement agreement between it and TriTexas was an express contract for insurance. Central asserts TriTexas breached the common law implied duty of good faith and fair dealing arising out of this relationship by attempting to eliminate the letter of credit by instructing Stemmons to dishonor the letter of credit when presented by Central.

The settlement agreement reflects that certain of the loans serviced by TriTexas for Central were made without TriTexas providing the permanent mortgage insurance Central required. This agreement also reflects Central believed a question existed on the enforceability of existing permanent mortgage insurance on the loans involved. The agreement then provides that TriTexas "agreed to act as the permanent mortgage insurer with respect to the loans" and "shall provide to Central the same coverage as would have been available had such insurance been obtained when the loans were originally made." TriTexas then agrees to secure this obligation by providing an irrevocable commercial letter of credit.

TriTexas's summary judgment evidence showed TriTexas was not an insurance company but a mortgage servicing company. This evidence also showed TriTexas was not a mortgage insurance company and did not issue mortgage guaranty insurance policies. Central did not controvert this summary judgment evidence.

We conclude TriTexas was not an insurer under the terms of the settlement agreement. We conclude the terms of the settlement do not establish an *Arnold* "special relationship." *See Arnold*, 725 S.W.2d at 167. Absent such a special relationship, the duty to act in good faith is contractual in nature. Its breach does not amount to an independent tort. *Crim Truck & Tractor*, 823 S.W.2d at 595 n. 5. We overrule Central's fourth point of error.

### B. Tortious Interference with the Settlement Agreement

Central contends TriTexas and Peek tortiously interfered with the settlement agreement between TriTexas and Central. Central based this claim upon its assertions that Peek caused TriTexas to refuse Central's demand on the letter of credit, which in turn Central alleges violated the terms of the settlement agreement.

As we have already said, a plaintiff cannot recover for tortious interference with a

contract if the allegedly interfering third party acted to protect his own legitimate interest. *Black Lake Pipe Line Co.*, 538 S.W.2d at 91. The summary judgment evidence shows Peek was a stockholder, officer, director, employee, and agent of Tri-Texas. His relationship and his stock ownership are both circumstances that, as a matter of law, prevent Central from recovering on its claim for tortious interference with the contract. We overrule Central's fifth point of error.

### C. Breach of Fiduciary Duty

Central contends that TriTexas is liable for punitive damages because TriTexas's refusal to turn over the tax escrows was a breach of a fiduciary duty arising out of the settlement agreement between TriTexas and Central. Central bases this claim on its contention that TriTexas held the tax escrows as the trustee for Central's benefit. Central concludes that because TriTexas was a trustee for its benefit, TriTexas owed fiduciary duties to Central. We disagree.

The question of whether a fiduciary duty exists is a question of law for the trial court's determination. *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Ordinarily, the existence of facts that give rise to a fiduciary duty are questions for the fact finder's determination. *See MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334, 337 (1944). However, where the facts are without dispute, a question of whether there is a breach of a fiduciary duty is also a question of law for the trial court's determination. *Fuqua*, 683 S.W.2d at 738.

A fiduciary duty is a formal, technical relationship of confidence and trust that imposes upon a fiduciary greater duties as a matter of law. *See Lovell*, 754 S.W.2d at 303. Proving the necessary fiduciary relationship requires more than evidence of prior dealings between the parties. The subjective trust one party places in another does not establish a confidential relationship. *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 565 (Tex.App.—Dallas 1990, writ denied).

The confidential or fiduciary relationship arises from such relationships as attorney-client, partnership, trustee-cestui que trust, and from informal social, moral, or personal relationships. *Consolidated Bearing v. First Nat'l Bank*, 720 S.W.2d 647, 648 (Tex.App.—Amarillo 1986, no writ). Proof of a confidential relationship outside the formal cases requires evidence that the dealings between the parties have continued for so long that one party is justified in relying on the other to act in his best interest. *Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App.—Dallas 1980, no writ). Courts strictly apply the test for a confidential or fiduciary relationship. *Consolidated Bearing*, 720 S.W.2d at 649.

Here there are no disputed fact questions. Central alleges that the fiduciary relationship between it and TriTexas arises out of the assertion that because the funds were in escrow accounts and TriTexas was trustee for Central's benefit on these accounts, a fiduciary relationship existed.

The payment of funds by the mortgagor into an "escrow" account for the mortgagee's use to meet tax and insurance obligations upon the property as they accrue does not create a trust or fiduciary relationship. *Wesson v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 905 n. 2 (Tex. 1982). Central does not allege, nor does the summary judgment evidence show, anything more than the usual tax and insurance escrow circumstances in a lending transaction. We overrule Central's sixth point of error.

### D. Tortious Interference with the Servicing Agreement

In its seventh point of error, Central contends that Marshall tortiously interfered with the servicing agreement between TriTexas and Central. Central asserts that Marshall is liable for punitive damages because Marshall refused to agree to permit TriTexas to transfer the escrow accounts to Central.

Marshall's summary judgment evidence shows he is a major shareholder of TriTex-

as and is one of its agents. Central did not controvert this summary judgment evidence. Where a financial interest privilege or principal agency relationship exists, there can be no tortious interference with a contract as a matter of law. *Schoellkopf,* 778 S.W.2d at 903. It is undisputed that Marshall meets both these criteria. We overrule Central's seventh point of error.

### CONSPIRACY

In its eighth point of error, Central contends the trial court erred in granting appellees summary judgment and in denying Central summary judgment on Central's claims for punitive damages because the concerted actions of Peek, Marshall, and TriTexas constitute a civil conspiracy.

The gist of a civil conspiracy is not the conspiracy itself but the damage resulting from commission of a wrong that injures another. *Schlumberger,* 435 S.W.2d at 856. There is no independent liability for civil conspiracy. *Schoellkopf,* 778 S.W.2d at 900. Because of our disposition of Central's other points of error, there is no independent wrong upon which the conspiracy claim can rest. We conclude as a matter of law that the trial court did not err in its disposition of the summary judgments insofar as they involve Central's allegations of a conspiracy. We overrule Central's eighth point of error.

We affirm the trial court's judgment.