**GRACE PETROLEUM CORP.,** Appellant,

v.

**John N. WILLIAMSON, Kay Williamson Butler & Gina Price,** Appellees.

**No. 12–93–00101–CV.**

Court of Appeals of Texas, Tyler.

May 12, 1995.

Rehearing Overruled July 31, 1995.

John H. Minton, Tyler, for appellant.

Ron Adkison, Henderson, for appellees.

RAMEY, Chief Justice.

Oil and gas lessee, Grace Petroleum Corporation ("Grace"), appeals from a trial court judgment of $500,000 in exemplary damages in favor of its lessors, John N. Williamson, Kay Williamson Butler and Gina Price (together "Williamsons"). Grace does not challenge in this appeal the award of compensatory damages in the amount of $25,000. Grace brings six points of error. We will reverse and render judgment that the Williamsons recover nothing on their exemplary damage claim.

Grace and Burk Royalty Company ("Burk") became the assignees of Williamsons' 1975 oil and gas lease ("the lease") containing 133 acres (called 126.9393 acres) situated in northeast Nacogdoches County.[1] For reasons not totally clear from the record, in May 1980, after part of the Williamsons' acreage[2] had been included in a proposed

Jopling Gas Unit plat attached to the unit designation, but which tract was not listed in the schedule of pooled leases, and also because of the proximity of the expiration date of the lease, Grace dispatched employee, Jack Wheeler, to secure an extension of the lease and ratification of the unit from the Williamsons.

The Williamsons agreed orally to Wheeler's request but then decided to confer with an attorney to further review the transaction. The lawyer arranged for Wheeler's representations of Grace's future pooling intentions to be reduced to writing, the pertinent part of which stated:

> When a well is drilled adjoining the above mentioned tract, it is the intention of Grace, et al., to place all of the remaining acreage from the Williamson leases into the units being formed.

This litigation arose several years later, because approximately 83 acres of the lease were not pooled into a *productive* unit.

In May 1981, Grace announced its intention to drill its Williamson # 1 well. All of the lease acreage was placed in the proposed unit. The unit, however, was never filed, and the well was not drilled.

In April 1983, Burk and Blevco Energy Company ("Blevco") established the Augustus C. Irwin, II B-1 Gas Unit which included the lease acreage. This well was initially completed as a gas well, but soon converted to an oil well as classified by the Texas Railroad Commission.

In 1984, the W.R. King No. 1 well was also drilled on the Irwin Unit. This well was completed in September by Burk, and it, likewise, was an oil well. Thereafter, the 693 acre Augustus C. Irwin II B-1 Gas Unit was terminated; two 160 acre oil units for production from the Irwin and King wells were established. Neither of the oil units included the 133 acre lease.

Subsequently, approximately 44 acres of the lease were designated as part of the Charles D. Adams Unit drilled by J. Paul Goldsmith. The 44 acres has remained a

---

1. Grace managed the Burk and Grace jointly owned leases in this area.

2. The Williamsons owned more than one tract in the area.

part of this producing unit, leaving approximately 83 acres (the "islandized" tract) not included in a producing unit. The record chronicles other efforts to designate the islandized tract as a part of producing units but these negotiations were unfruitful. The jury's finding of significant drainage of the islandized tract by neighboring wells with the consequent diminution of royalty income is unchallenged in this appeal.

The Williamsons filed suit against Grace and Burk alleging various causes of action including drainage of the islandized acreage, Wheeler's fraudulent misrepresentation and exemplary damages. Upon trial, the jury found:

- Grace's operations permitted substantial drainage.
- Grace had agreed to include all of Plaintiffs' acreage in oil or gas units.
- Grace did not fail to include all of Plaintiffs' acreage in such units.
- Grace breached its covenant to develop Plaintiffs' acreage in a reasonable manner.
- Grace made fraudulent representations that it would place all of the lease acreage into units.
- Plaintiffs' damages for "lost income from oil and gas revenues" were $25,000.
- The sum of $500,000 was "appropriate for exemplary damages".

Grace and Burk filed motions for judgment notwithstanding the verdict; the trial court granted Burk's motion but denied Grace's. Consonant with the verdict, the trial court awarded $25,000 actual damages and $500,000 in exemplary damages against Grace.

■ Grace's first point of error asserts that exemplary damages are not recoverable, because the substance of the Williamsons' cause of action is a claim for breach of contract. We will jointly consider Grace's related point of error 4.B. contending that there was no evidence of separate and distinct tort damages to support the jury's finding of exemplary damages. When a "no evidence"

point is raised by the party that does not have the burden of proof as to an issue,

we must examine the record in the light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which support the finding, and we must disregard all evidence or reasonable inferences therefrom to the contrary. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

*Matter of Marriage of DeVine,* 869 S.W.2d 415, 420 (Tex.App.—Amarillo 1993, no writ).

■ Exemplary damages may not be awarded for a breach of contract. *Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981). They are, however, authorized in tort actions. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). A contractual relationship between the parties may create duties under both contract and tort law. *Ibid.*

■ The mere joinder of a claim in contract with a claim in tort does not alter the fundamental rule: breach of contract cannot support the recovery of exemplary damages. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 745 (Tex.1986). To determine whether the plaintiff may recover on an asserted tort theory, we are directed to examine the *nature* of the plaintiff's *loss,* because the nature of the injury most often determines which duty has been breached. *Southwestern Bell Telephone Company v. DeLanney,* 809 S.W.2d 493, 494–95 (Tex. 1991); *Jim Walter Homes, Inc.,* 711 S.W.2d at 618. To support an award of exemplary damages, the plaintiff must prove a "distinct" tortious injury with actual damages arising from that injury. *Ibid; Texas National Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex. 1983); *Bellefonte Underwriters Ins. Co.,* 704 S.W.2d at 745.[3]

---

3. The only expression by the supreme court that even inferentially suggests a different standard was its modification of a court of appeals opinion where it also eliminated an award of exemplary damages but expressly on the grounds that there was no evidence that the defendant had no inten-

As stated, the jury here found liability against Grace on three theories: (1) breach of the lease covenants to prevent drainage, and (2) breach of the lease covenant to develop Williamsons' property in a reasonable manner, and (3) Grace's fraudulent misrepresentations in inducing the Williamsons to extend the lease and to ratify the Jopling unit. The first two theories sound in contract. *Amoco Production Co,* 622 S.W.2d at 571. Even if the breach of these implied covenants were intentional, exemplary damages could not be assessed. *Ibid.* But the Williamsons strongly urge that the third ground, Wheeler's fraudulent misrepresentation, does support the recovery of exemplary damages. The Williamsons argue that since the trial court, without objection, submitted only a single jury question inquiring about all of the actual damages, they are relieved from demonstrating the portion of their damages attributable to the tortious conduct. We, however, have searched the record in vain to uncover any evidence of their injury apart from that proximately caused by the drainage of the lease. Our review reveals no distinct damages attributable to the tort; the Williamsons direct us to no specific evidence of injury other than the drainage.

Furthermore, the trial court itself, in instructing the jury on the actual damage question in the charge, restricted jury consideration to those damages resulting solely from the loss of income from the lease. Thus, the only actual damage jury issue was limited to contractual damages, the precise state of the record in *Jim Walter Homes, Inc.,* 711 S.W.2d at 618. Distinct actual damages attributable to the fraudulent misrepresentation and not attributable to the breach of contract must be proved for the exemplary damage award to survive. *Central Savings and Loan Assn. v. Stemmons Northwest Bank,* 848 S.W.2d 232, 240 (Tex.App.—Dallas 1992, no writ).

■ Furthermore, Williamsons' actual injury was an economic loss to the subject matter of an enforceable agreement; such economic loss sounds in contract, not in tort.

*Southwestern Bell Telephone Co.,* 809 S.W.2d at 495; *Jim Walter Homes, Inc.,* 711 S.W.2d at 618; *Central Savings and Loan,* 848 S.W.2d at 240; *C & C Partners v. Sun Exploration and Prod. Co.,* 783 S.W.2d 707 (Tex.App.—Dallas 1989, writ denied); *Hebisen v. Nassau Development Co.,* 754 S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Again, no basis upon which exemplary damages may be awarded is presented.

The Williamsons, however, argue that the tort of fraud has been treated differently from negligence causes of action when considering these damages. *Matthews v. Am-West Sav. Ass'n.,* 825 S.W.2d 552, 554 (Tex. App.—Beaumont 1992, writ denied). But the three cases cited immediately above, *Central Savings and Loan v. Stemmons Northwest, C & C Partners v. Sun Exploration and Prod. Co.,* and *Hebisen v. Nassau Development Co.,* each disallowed the recovery of exemplary damages where fraud was the basis for recovery duplicating a companion recovery for breach of contract. It is not accurate to assert that the tort of fraud has been treated differently from other torts with respect to the application of the controlling rule in this case.

The *Matthews* court did note a distinction between negligence and fraud based on their disparate origins in the common law writs of trespass and debt, but such observation should not obscure the court's simple holding that an "attempt to recover the benefit of the bargain [in the absence of an enforceable contract] does not transform a fraud into a breach of contract." *Matthews v. AmWest Sav. Ass'n.,* 825 S.W.2d. at 554. That case did not present a fact situation analogous to the one here, of a recovery for both breach of contract and fraud, with identical contractual damages.

There is no evidence that the Williamsons sustained distinct damages attributable to Grace's fraudulent misrepresentation; the nature of their injury in this record is contractual. We must sustain Grace's points of

tion of paying for the goods at the time he promised to pay for them. *Schindler v. Austwell Farmers Co-op,* 841 S.W.2d 853 (Tex.1992). This

opinion is not inconsistent with the rationale announced in the cited cases.

error numbered 1 and 4.B. Grace's other points of error will not be addressed.

We reverse and render the trial court judgment insofar as it awards exemplary damages and hold that the Williamsons take nothing on their claim for exemplary damages.