Opinion issued April 28, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00916-CV

———————————

Danielle Prince, Appellant

V.

National
Smart Healthcare Services, Inc. and Richard Denegall, Appellees



 



 

On Appeal from the 125th District Court 

Harris County, Texas



Trial Court Case No. 2007-36133

 



 

MEMORANDUM OPINION

Appellant
Danielle Prince sued appellees National Smart Healthcare Services and Richard
Denegall for tortious interference with a contract, invasion of privacy, and
slander.  NSHS and Denegall filed a joint
motion for summary judgment.  Prince
filed a response, arguing that the appellees had not established their
entitlement to summary judgment.  She
also filed a motion for continuance, requesting more time to conduct discovery
and to adequately respond to the summary-judgment motion.  The trial court denied the motion for
continuance and granted summary judgment in favor of NSHS and Denegall.  On appeal, Prince challenges the trial
court’s denial of its motion for continuance and the order granting summary
judgment in favor of the appellees.  We affirm.

Background

          Danielle
Prince worked full-time for Denegall, the president of NSHS, and part-time under
the supervision of Dr. Paul Bettega at Harmony House.  While Prince was employed at NSHS, Denegall
required her to sign a confidentiality agreement in which she agreed not to
disclose any confidential information related to NSHS.  Prince alleged that Denegall withheld her
paycheck until she agreed to sign the form and that the agreement implied that
she was not to associate with two of her friends outside of work.  Prince claims that Denegall told her it was
inappropriate for her to associate with the two friends and that she “better
not” attend a baby shower hosted by one of them.  Denegall contends, however, that he required Prince
to sign the form because her two friends were claiming unemployment benefits
against NSHS and he did not want Prince to discuss confidential information
with them. 

After signing the agreement, Prince
resigned from NSHS.  Prince alleged that,
“[a]s soon as [she] left NSHS,” she received a call from Christine Burns, a
co-worker at Harmony House.  Burnes told
her Denegall had called Bettega, and as a result of their conversation, Bettega
“was no longer comfortable with me working at Harmony House.”  Denegall claims that Prince was never fired
from Harmony House, and that, even if she had been, he, as a co-manager of
Harmony House, had the authority to fire her.

          Prince
sued NSHS and Denegall for invasion of privacy, tortious interference with a
contract, and slander.  The trial court
entered a docket control order that provided for an initial trial date, as well
as a dispositive motion deadline and discovery deadline.  After the dispositive motion deadline and
discovery deadlines passed, NSHS and Denegall filed a traditional motion for
summary judgment.  Prince filed a joint
response and motion for continuance requesting time to depose Denegall,
Bettega, and Burns.  The trial court
granted summary judgment in favor of NSHS and Denegall, thereby denying
Prince’s motion for continuance.  On
appeal, Prince argues that the trial court erred in considering the motion for
summary judgment without also allowing additional time for discovery and in
denying her motion for continuance.  She
also contends that summary judgment was improper because she raised questions
of material fact as to her claims for tortious interference with a contract and
invasion of privacy.

Analysis

I.                 
Motion for continuance

In two issues, Prince complains
that the trial court erred in considering the NSHS and Denegall’s motion for
summary judgment without reopening the discovery period and in refusing to
grant her motion for continuance.  Prince
argues that the trial court should have granted her motion for continuance so
that she could properly respond to the summary-judgment motion, and she
contends that the trial court should have reopened the discovery period because
NSHS and Denegall filed for summary judgment after the deadline on the court’s docket control order.

We review a denial of a
motion for continuance under an abuse of discretion standard.  Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 161 (Tex. 2004).  A trial court abuses its discretion if it acts
in an arbitrary or unreasonable manner without reference to guiding rules or
principles.  See Garcia v. Martinez,
988 S.W.2d 219, 222 (Tex. 1999).  There are three relevant factors used in
deciding whether the trial court abused its discretion in denying a motion for
continuance.  Laughlin v. Bergman, 962 S.W.2d 64, 65–66 (Tex. App.—Houston
[1st Dist.] 1997, no pet.).  These
factors include: (1) the length of time the case had been on file;
(2) the materiality of the discovery sought; and (3) due diligence of
counsel.  Id.; Levinthal v.
Kelsey-Seybold Clinic, P.A.,
902 S.W.2d 508, 510 (Tex. App.—Houston [1st Dist.] 1994, no writ).  In
determining whether there has been an abuse of discretion, we view the evidence in the
light most favorable to the trial court and indulge every presumption in favor
of the judgment.  Hatteberg v. Hatteberg, 933 S.W.2d 522, 526 (Tex. App.—Houston [1st
Dist.] 1994, no writ) (citing Parks v.
U.S. Home, 652 S.W.2d 479, 485 (Tex. App.—Houston [1st Dist.] 1983, writ
dism’d)).

Prince’s counsel stated that he
could not properly respond to the summary-judgment motion without deposing
Denegall, Bettega, and Burns because they each had personal knowledge of facts
that would support Prince’s claims.  The
affidavit further stated that Prince’s counsel could not obtain the deposition
testimony between the time he was served with the motion and the date of the
hearing because he was busy responding to a motion for summary judgment for
another client and preparing for and attending a trial.  He did not, however, explain why he was
unable to depose the witnesses during the discovery period set by the docket
control order.

Prince’s suit had been pending for
over two years when the trial court granted summary judgment.  When a party does not diligently utilize the
procedures for discovery, the trial court does not abuse its discretion by
refusing to grant a continuance.  See State v. Wood Oil Distrib. Inc., 751
S.W.2d 863, 865 (Tex. 1988).  On appeal,
Prince’s counsel states that he chose not to depose the witnesses during the
discovery period because the trial court’s docket control order “protected” the
plaintiff from the filing of dispositive motions.  He argues:

The
Docket Control Order protected [the] Plaintiff from having to respond to a
summary judgment without necessary deposition testimony.  If a dispositive motion was not filed [before
the deadline], Plaintiff could be spared the expense of depositions and could
have presented necessary evidence through live witnesses at trial.  Plaintiff’s counsel did not lack diligence by
not taking these depositions prior to the discovery cutoff, because he knew
that no dispositive motion had been or could be timely filed.

 

This argument
fails to recognize that a trial court has the inherent right to change or
modify a docket control order.  Ocean Transp., Inc. v. Greycas, Inc.,
878 S.W.2d 256, 262 (Tex. App.—Corpus Christi 1994, writ denied).  Rule 166 of the Texas
Rules of Civil Procedure provides for an order to be made at the pre-trial
conference hearing, and that “such order when issued shall control the
subsequent course of the action, unless modified . . . to prevent manifest
injustice.” Tex.
R. Civ. P. 166.  In this
case, the trial court entered a docket control order, which provided that it
would control “unless modified by the court.” 
While Prince argues that the trial court abused its discretion in
“re-opening” the dispositive motion deadline without also allowing further
discovery, her counsel’s affidavit failed to explain why he was prevented from
obtaining the necessary evidence during the discovery period.  Accordingly, the
trial court did not abuse its discretion by denying Prince’s motion for continuance.  See
Wood Oil, 751 S.W.2d at 865. 
Prince’s first and second issues are overruled.

II.              
Summary judgment

In her third issue, Prince argues that summary judgment was
improperly granted because she raised questions of material fact as to her
claims for tortious interference with a contract and invasion of privacy.  With respect to the tortious interference
claim, NSHS and Denegall argue that summary judgment was proper because the
summary-judgment evidence conclusively established that Denegall’s actions were
privileged and that they did not interfere with Prince’s at-will employment
contract with Harmony House.  NSHS and
Denegall also argue that Prince’s claim for invasion of privacy was properly dismissed
because they disproved each element of her cause of action. 

We review a trial court’s decision to grant a
motion for summary judgment de novo.  Valence
Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).  Under
the traditional summary-judgment standard, the movant has the burden to show that no
genuine issues of material fact exist and that it is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  A defendant moving for summary judgment must
conclusively negate at least one essential element of each of the plaintiff’s
causes of action or conclusively establish each element of an affirmative
defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 
In determining whether there are disputed issues of material fact, we take
as true all evidence favorable to the nonmovant and indulge every reasonable
inference in the nonmovant’s favor.  Nixon, 690 S.W.2d at 548–49.  

A.              
Tortious interference with a contract

To recover for
tortious interference with a contract, a plaintiff must prove: (1) the
existence of a contract subject to interference; (2) a willful and
intentional act of interference; (3) that proximately caused the
plaintiff's injury, and (4) actual damage or loss.  See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 207 (Tex.
2002); ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex.
1997).  Even if the plaintiff is able to
establish each of the above elements, a defendant may negate liability by
pleading and proving that its conduct was privileged.  See ACS Investors, 943 S.W.2d at 431.  A person is privileged to interfere with
another’s contract if it is done in a bona fide exercise of his own rights or
if he has an equal or superior right in the subject matter to that of the other
party.  Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 211 (Tex. 1996).  When a privilege based on a financial
interest or principal-agent relationship exists, there can be no tortious
interference with a contract as a matter of law.  Cent.
Sav. & Loan Ass’n v. Stemmons Nw. Bank, N.A, 848 S.W.2d 232, 241–42
(Tex. App.—Dallas 1992, no writ) (citing Schoellkopf
v. Pledger, 778 S.W.2d 897, 903 (Tex. App.—Dallas 1989 writ denied)).

          In this case, Prince argues that she
raised an issue of material fact as to each element of her
claim for tortious interference.  In her
sworn affidavit, to which NSHS and Denegall raised no objections, Prince
averred that she was an employee of both NSHS and Harmony House.  After resigning from NSHS, Prince stated that
she received a phone call from Burns. 
Burns “informed [Prince] that Richard Denegal [her boss at NSHS] had
contacted Dr. Paul Bettega [her boss at Harmony House], and as a result of that
conversation, Dr. Betegga was no longer comfortable with [Prince] working at
Harmony House.”  In her response, Prince
argued that these facts raised a question of material fact as to the existence
of an at-will employment contract, Denegall’s interference with that contract, and harm to her employment relationship.

          NSHS and Denegall argue that Denegall
did not interfere with Prince’s contract with Harmony House, that Denegall’s
conduct was privileged, and that Prince did not raise a fact issue.  NSHS and Denegall attached Denegall’s sworn
affidavit to their summary-judgment motion. 
Denegall averred that neither he nor NSHS interfered with Prince’s
contract with Harmony House.  Denegall
also swore that he was a partner with Bettega in the management of Harmony
House and that he had the right to hire and fire employees.  Although Prince’s affidavit stated that
Bettega was her boss, it did not controvert these facts.  As a matter of law, privilege is established
if the defendant demonstrates that the alleged interference was a bona fide
exercise of his own rights.  Tex. Beef Cattle, 921 S.W.2d at
211.  Here, the uncontroverted evidence
is that Denegall had the right to hire and fire employees at Harmony House,
including Prince.  Because Prince’s
response and supporting affidavits failed to raise a question of material fact
as to Denegall’s claim of privilege, the trial court did not err in granting
summary judgment on her tortious interference claim.

B.              
Invasion of privacy

Texas law recognizes a common-law
right to privacy.  Billings v. Atkinson, 489 S.W.2d 858, 859 (Tex. 1973); Farrington v. Sysco Food Srvs., Inc.,
865 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1993, writ denied).  To prove invasion of privacy, Prince must
establish: (1) that NSHS and Denegall intentionally intruded, physically
or otherwise, upon her solitude, seclusion, or private affairs or concerns;
(2) that such intrusion would be highly offensive to a reasonable person;
and (3) that she suffered injury as a result of the appellee’s
intrusion.  See Valenzuela v. Aquino, 853 S.W.2d 512, 513 (Tex. 1993).  The plaintiff must also establish that she suffered injury as a result of the
defendant’s intrusion.  Clayton v. Wisener, 190 S.W.3d 685, 696
(Tex. App.—Tyler 2005, no pet.).

On appeal, NSHS and Denegall argue that the summary-judgment evidence
disproved each element of Prince’s cause of action and that there was no
evidence that Prince suffered an injury as a result of the alleged intrusion.  Denegall averred that he asked Prince to
refrain from discussing confidential information with two of her friends who
were involved in a benefits dispute with NSHS. 
He stated that he “never told [Prince] she could not associate with them
during her personal time.”

Prince argues that the trial court improperly granted summary
judgment on her invasion of privacy claim because the summary-judgment evidence
raised a fact issue as to each of the elements of her claim.  She averred that Denegall told her it was
inappropriate for her to associate with her two fiends and that she “better
not” attend a baby shower hosted by one of them.  Prince stated that Denegall withheld her
paycheck until she signed an agreement, “which inferred that I would no longer
associate with [my friends].”

          Taking all of Prince’s allegations as true, as we
must, we conclude that she has failed to raise a question of material fact as
to each element of a claim for invasion of privacy.  Intrusion upon
seclusion is “typically associated with either a physical invasion of a
person’s property or eavesdropping on another’s conversation with the aid of
wiretaps, microphones, or spying.”  Id.; GTE Mobilnet of S. Tex. Ltd. P’ship v. Pascouet, 61 S.W.3d 599, 618
(Tex. App.—Houston [14th Dist.] 2001, pet. denied).  Although the right to privacy includes the
right to be free from willful intrusions into one’s personal life at home and
at work, Prince has not alleged a legally cognizable claim for invasion of
privacy.  See Valenzuela v. Aquino, 763 S.W.2d 43, 45 (Tex. App.—Corpus
Christi 1988, no writ).  It is not enough
that Denegall told her that she should not associate with certain people, nor
is it sufficient that he required her to sign a confidentiality agreement,
which she believed implied that she would no longer associate with two of her
friends.  See Clayton, 190 S.W.3d at 696–97 (holding that plaintiff could not
recover for invasion of privacy when she did not allege physical invasion or
eavesdropping); GTE Mobilnet, 61
S.W.3d at 618; see also Cornhill Ins. PLC v. Valsamis, Inc., 106
F.3d 80, 85 (5th Cir. 1997) (holding that Texas law does not recognize a cause
of action for invasion of privacy based on allegation of offensive comments and
inappropriate advances).  The facts, as
alleged by Prince, are simply not cognizable as a cause of action for invasion
of privacy.  We conclude the trial court
did not err in granting summary judgment because Prince failed to raise a
question of material fact as to each element of her invasion of privacy
claim.  Prince’s third issue is
overruled.

Conclusion

          We affirm the judgment of the trial
court.

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Keyes,
Sharp, and Massengale.

Justice Sharp, concurring.