PECO CONSTRUCTION CO., Appellant,

v.

J. Anthony GUAJARDO, Jr., Appellee.

No. 04–94–00689–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 29, 1996.

Rehearing Denied March 28, 1996.

Andy Douglas, Michael H. Patterson, Valinda J. Astoria, Douglas & Elms, Inc., San Antonio, for Appellant.

J. Anthony Guajardo, Sr., San Antonio, Matthew S. Muller, Houston, for Appellee.

Before LÓPEZ, GREEN and DUNCAN, JJ.

## OPINION

GREEN, Justice.

Peco Construction Co. (Peco), appellant, was the general contractor for a school district construction project (the Judson project). Peco contracted with R–K Construction (R–K) to do the site preparation work on the project. In order to do the work, R–K rented certain heavy equipment from J. Anthony Guajardo, Jr. (Guajardo), appellee. R–K failed to pay for the equipment and Guajardo sued both R–K and Peco for the lost rental income. A default judgment was en-

tered against R–K and that matter has been severed from this cause. The allegation against Peco was that it breached its promise to issue payment checks jointly to R–K and Guajardo for the protection of Guajardo's payment.

Guajardo's case against Peco proceeded to trial before a jury on theories of breach of contract, quantum meruit, and common law fraud. The jury found against Peco on all submitted liability theories, awarding actual damages in the amount of $7,700, punitive damages of $23,100, and attorney's fees. Guajardo elected recovery on the fraud theory, and judgment was rendered accordingly in his favor. Peco brings nine points of error, contending that the facts do not support a fraud cause of action and attacking the legal and factual sufficiency of the evidence. We affirm the judgment.[1]

### The Contract/Tort Dilemma

The jury found that Peco's refusal to enter into the joint-check agreement, or to issue joint checks, constituted fraud. But Peco insists that this is not a fraud case. Instead, Peco says that Guajardo seeks to recover only the benefit of his bargain—the rental amount R–K agreed to pay for the use of Guajardo's equipment. Peco thus asserts that, in actuality, this is an action in contract and, consequently, Guajardo's fraud action is precluded. See Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494–95 (Tex. 1991).

The issue of whether tort recoveries are also available where a contract exists between the parties has long been problematic.[2] But certain guidelines have emerged to assist in determining whether an action is properly one in tort, or one in contract, or whether both may be maintained. "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." DeLanney, 809 S.W.2d at 494; see Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex.1986) ("When the injury is only the economic loss to the subject matter of a contract itself the action sounds in contract alone."). But, when the obligation is one imposed by law rather than from the promises made by the parties, the action is ordinarily in tort. DeLanney, 809 S.W.2d at 494. Tort and contract claims may both be asserted if the defendant's conduct would give rise to liability independent of the fact that a contract exists. Id.[3]

Utilizing these guidelines, we must first determine whether there was a contract between the parties. If a contract exists, we next determine whether the defendant's conduct gave rise to tort liability independent of the contract.

The evidence in this case establishes the existence of a contract between Peco and Guajardo—Peco promised to issue joint checks to Guajardo and R–K in exchange for which Guajardo left its equipment

---

1. American National Fire Insurance Co., Peco's bonding company, was also named as a defendant in this cause, but we cannot determine from the record what, if any, disposition was made of that defendant by the trial court. The judgment fails to clearly identify the defendant(s) against whom it is rendered. But it is noted that the jury found that Guajardo had properly perfected his claim against the bonding company. And it was stipulated by defendants that liability as to one binds the other. Accordingly, while it is true that only Peco Construction Co. has appealed, the judgment is considered final for this appeal. "When a judgment ... is rendered and entered in a case regularly set for a conventional trial on the merits, ... it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it...." North East Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897–98 (Tex.1966).

2. There is no "universally accurate or acceptable definition" of when a cause of action sounds in contract or in tort. International Printing Pressmen and Assistants' Union v. Smith, 145 Tex. 399, 198 S.W.2d 729, 735 (1946).

3. A number of generalizations have been suggested as useful in distinguishing between contract and tort liability: "(1) obligations imposed by law are tort obligations; (2) misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things; (3) recovery of intangible economic losses is normally determined by contract law; and (4) there is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. PROSSER AND KEETON at 656–57." DeLanney, 809 S.W.2d at 495, n. 2.

at the job site. And we agree with Peco that Guajardo's damages under a contract theory include the loss of the benefit of his bargain. But we disagree with Peco that Guajardo is thereby precluded from recovering for fraud. Loss of the benefit of the bargain damages are also recoverable under a fraud cause of action. *See W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988) (misrepresentation damages include loss of the benefit of the bargain). So, even if Peco breached its contract with Guajardo, whose contract loss would be measured by the benefit of the bargain he made with Peco, Guajardo may still be entitled to recover for fraud if the basis of the fraud claim is independent of the breach of contract.[4]

Because of the existence of a contract between the parties, Guajardo's fraud recovery can be sustained only if the evidence supports the jury's finding of fraud independent of the contract action.

### Sufficiency of the Evidence

■ Peco attacks the judgment on the basis that the evidence is legally and factually insufficient to support the jury's findings that Peco promised to issue a joint-check agreement to Guajardo, that Peco committed fraud, and that Guajardo performed compensable work for Peco. In reviewing legal sufficiency, or "no evidence," points, the reviewing court considers only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.

1965). If there is more than a scintilla of evidence to support the finding, the "no evidence" point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988).

■ In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

### The Fraud Verdict

■ To establish actionable fraud, a plaintiff must prove that the defendant made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, was relied upon, and which caused injury." *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). Moreover, "[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986).

■ Utilizing the sufficiency of the evidence standards described above, we find in the record the following evidence and inferences: From the time of being awarded the

---

4. We recognize there is authority that suggests the contrary. Some courts of appeals appear to have held that if the injury is the loss of the benefit of the bargain, the cause of action is solely in contract. *See Parker v. Parker,* 897 S.W.2d 918, 924 (Tex.App.—Fort Worth 1995, writ denied) (injury from alleged fraud was loss of benefit of the bargain; the cause of action sounded solely in contract); *Leach v. Conoco, Inc.,* 892 S.W.2d 954, 960 (Tex.App.—Houston [1st Dist.] 1995, dism'd w.o.j.); *Barbouti v. Munden,* 866 S.W.2d 288, 294 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (both appearing to equate benefit of the bargain measure of damages with an action sounding solely in contract); *Central Sav. & Loan Ass'n v. Stemmons Northwest*

*Bank, N.A.,* 848 S.W.2d 232, 240–41 (Tex.App.—Dallas 1992, no writ) (cause of action sounds solely in contract because damages alleged were "only economic injury to the subject matter of the contract"). But we decline to follow our sister courts on this issue for at least two reasons. First, as noted above, benefit of the bargain damages are not restricted to breach of contract actions; they are also recoverable in fraud cases. *W.O. Bankston Nissan,* 754 S.W.2d at 128. Second, and more important, the *DeLanney* analysis precludes such a simplistic formula. The source of the duty must be considered along with the nature of the injury in determining whether the cause of action sounds in tort, in contract, or both.

2048

site work subcontract, R–K caused problems and delay on the Judson project. As reflected in the notes of the project superintendent, Edward Dahlke, R–K was understaffed and without the necessary equipment to perform the job. On September 2, 1992, Building 3 was ready for pneumatic rolling, but R–K was still trying to get the needed equipment.

Because of their financial problems, and their inability to get credit, R–K was having a hard time getting anyone to rent them the equipment they needed. Finally, on Wednesday, September 9, 1992, the two partners involved in R–K, Ron Koby and Ray Thomas, approached Guajardo about leasing three pieces of used and admittedly flawed equipment for approximately two weeks. After the men arrived at acceptable rental rates, Koby and Thomas told Guajardo that, because of their money problems, they would not be able to pay him for some weeks down the road. When Guajardo indicated his reluctance to rent the equipment on this basis, Koby and Thomas assured him that Peco would give him a joint check agreement, just as it had given to R–K's other suppliers, TKO and Redland. This arrangement was new, but acceptable, to Guajardo; therefore, he conditionally delivered the equipment to the job site that evening.

While at the job site, Guajardo met Peco's project manager, Mike Chauret, and told him that he needed a joint check agreement; otherwise, Guajardo would load up his equipment and take it back to his shop. By this time, R–K had already delayed the project by almost two weeks. Chauret promised Guajardo that he would get him a joint check agreement, like those Peco had given to other R–K suppliers, and he would bring a blank joint check agreement form to the job site the following Monday. Had Chauret refused to provide Guajardo with a joint check agree-

ment, or had he equivocated, Guajardo would have pulled his equipment.

Guajardo returned to the job site the following Monday and several times the following week to pick up the joint check agreement form. But Chauret was not there, and he had not left a joint check agreement form at the job site. However, since Guajardo thought he and Chauret were just missing each other, Guajardo left his equipment at the job site so that R–K could continue its work.

Finally, Guajardo simply bypassed Chauret and picked up a blank joint check agreement form at Peco's main office.[5] After Peco's front office staff typed in the requisite information on the form, Guajardo went in search of Koby or Thomas to sign for R–K. This was neither easy nor quick since one of the larger problems on the Judson project was the fact that Koby and Thomas were rarely present to supervise R–K's employees' work. Finally, on October 14, Guajardo caught up with Thomas, who signed the form. But when Guajardo returned the form to Peco's office for its signature, Chauret told Guajardo that Thomas was not authorized to sign for R–K.[6]

Guajardo finally tracked Koby down on October 19 and obtained his signature on a new joint check agreement. This time, however, Chauret told Guajardo that Peco would not sign the joint check agreement because Peco did not owe Guajardo any money; Guajardo's agreement was with R–K, and it was R–K that owed Guajardo money.

When viewed in the light most favorable to the jury's verdict, the evidence establishes that when Chauret promised to provide Guajardo a joint check agreement, he knew it was against company policy to do so. Indeed, Chauret testified that it would have been against company policy to give Guajardo a joint check agreement after the equipment had been delivered to the job site.[7]

---

5. When this occurred is not entirely clear. At one point, Guajardo testified that he picked up the form on September 15; however, on cross-examination, he said he was not sure if he picked up the form on September 15 or some time thereafter.

6. At trial, both Chauret and his boss testified that they believed Thomas was a partner in R–K and fully authorized to sign for the company.

7. This aspect of Peco's company policy was confirmed by Peco representative Wright and is undisputed in the record before us. However, the record also establishes that, although Anderson Machinery delivered equipment to the job site in

Also significant is the fact that Chauret denied making, and made no effort or pretense of complying with, his promise to bring a blank joint check agreement form to the job site in the week following the delivery of the equipment.

We believe this evidence, and reasonable inferences therefrom, is legally sufficient to support the jury's finding that, at the time Chauret promised to provide Guajardo with a joint check agreement, Chauret did not in fact intend to do so. Our conclusion is buttressed by the circumstantial evidence tending to suggest that, from the moment Guajardo delivered his equipment to the job site, it was in both Peco and Chauret's financial interest to ensure that R–K be able to use Guajardo's equipment for as long as possible without anyone paying for it.[8]

We have carefully read the record in this case. And were we sitting as jurors we might well disagree with the finding of fraud. However, giving due deference to the jury's role in determining the weight and credibility to be given to the witnesses' testimony, we believe the jury's fraud finding is supported by legally sufficient evidence and reasonable inferences and is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Peco's first three points of error are overruled. And because we have found that Guajardo is entitled to recover under the fraud theory, points of error six through nine are overruled as moot.

### Exemplary Damages

Peco next attacks the exemplary damages awarded against it on the basis that those damages are not recoverable in what is actually a breach of contract action and, further, that the amount of the exemplary damages is excessive in view of the entire record. We have already concluded that Guajardo's fraud cause of action is supported by the evidence; consequently, exemplary damages are not precluded. TEX.CIV.PRAC. & REM.CODE ANN. § 41.003 (Vernon Supp.1995). We are left to decide, then, whether the amount of the exemplary damages as found by the jury is excessive.

■ "Exemplary damages must be reasonably proportioned to actual damages." *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). What is a reasonable proportion depends on the facts in each case. *Id.* In making this determination, *Kraus* sets out the following factors to consider: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Kraus*, 616 S.W.2d at 910.[9]

■ In this case, the jury awarded three times the amount of actual damages as exemplary damages. Whether this amount is excessive is reviewed on a factual sufficiency standard. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986) (per curiam). In a factual sufficiency review, we may not substitute our judgment for that of the trier of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding

September, it received a joint check in October despite the fact that the joint check agreement given to Anderson was not signed by either Peco or R–K until November 4 and was never signed by Anderson. No Peco representative explained this deviation from company policy.

8. Contrary to Wright's testimony, Chauret received a commission based in part upon Peco's profits. Therefore, it was not only in Peco's financial interest, but also in Chauret's personal financial interest, to maximize the profit on the job and, therefore, to stall Guajardo until after R–K's work was completed and Guajardo's equipment no longer needed. In this respect, the jury was entitled to consider that Chauret failed to deliver the joint check agreement form to the job site and refused the first joint check agree-

ment on the spurious ground that Guajardo had not obtained an authorized signature for R–K.

9. Whether *Kraus*, a gross negligence case, sets out the appropriate standard for reviewing excessiveness of exemplary damages in fraud or other intentional tort cases is uncertain. But we presume that exemplary damages in intentional tort cases, because of the willful nature of the conduct, call for a less restrictive excessiveness scrutiny than similar damages in gross negligence cases. At the very least, the degree of scrutiny should be no greater than that utilized in gross negligence cases. Accordingly, if the exemplary damages in this case survive a *Kraus* review for excessiveness, the damages will be upheld. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d at 910.

shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool,* 715 S.W.2d at 635.

■ When exemplary damage awards are challenged on factual sufficiency grounds, we are required, whether reversing or affirming the award, to detail all the evidence and explain why the jury's finding is, or is not, supported by factually sufficient evidence or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994).

■ The evidence most favorable to the verdict has previously been detailed with reference to the fraud issue; it is relevant as well to the exemplary damages finding. But, for this factual sufficiency analysis, we must add to that any evidence and inferences that preponderate against the verdict.

At trial, Chauret's testimony directly conflicted with Guajardo's in several respects. He denied meeting Guajardo on September 9; he denied watching Guajardo deliver his equipment to the Judson site; he denied promising Guajardo that he would obtain a joint check agreement for him; and he denied promising Guajardo that he would deliver the joint check form to the Judson site. In fact, Chauret testified that, when he first met Guajardo, Guajardo was looking for a check from a friend.[10] And, as previously noted, Chauret testified it would have been against company policy to give Guajardo a joint check agreement after the equipment had been delivered to the job site.

We believe the evidence is both legally and factually sufficient to support an award of exemplary damages. And when the *Kraus* factors are applied to the evidence, we cannot conclude that an exemplary damages finding of three times actual damages is an unreasonable proportion in this case. The nature and character of Peco's conduct in promising to issue joint checks with no present intention of doing so, along with its subsequent conduct in misleading Guajardo that a joint check agreement would ultimately be signed, was the type of conduct that could "offend[ ] a public sense of justice and propriety." *Kraus,* 616 S.W.2d at 910. And while an exemplary damages award of a ratio as found by this jury may be a little surprising under the facts of this case, it is not excessive when measured against the great weight and preponderance of the evidence standard. Moreover, by statute the amount is presumptively reasonable. TEX.CIV.PRAC. & REM.CODE ANN. § 41.007 and 41.008 (Vernon Supp.1995) (exemplary damages limited to four times actual damages or $200,000, whichever is greater, but no limitation for intentional torts). Appellant's fourth and fifth point of error are overruled.

### Guajardo's Cross–Point for Sanctions

■ Guajardo seeks sanctions against Peco claiming the appeal was frivolously filed. *See* TEX.R.APP.P. 84.

As noted at the outset, the question of whether a set of facts raises a tort or a breach of contract cause of action is often ambiguous and confusing. By pleading both tort and contract theories, Guajardo injected this difficult issue into the case. In response, Peco asserted legitimate legal grounds for challenging the propriety of the tort finding in what is actually a close case. Indeed, had this case been tried and appealed in another appellate district Peco might have prevailed.[11] Peco has thus raised some difficult and important issues that have not been addressed by this court post-*DeLanney.* The appeal is far from frivolous and the cross-point is overruled.

### Conclusion

All points of error are overruled. The judgment is affirmed.

---

**10.** One of Peco's themes during trial was that Guajardo was not concerned about being paid by R–K because he and Koby were personal friends. The record establishes, however, that Guajardo knew Koby only because he had once rented a single piece of equipment from Guajardo for one day.

**11.** See the cases cited in footnote 4.