933 S.W.2d 685 (1996)
AMERICAN NATIONAL INSURANCE COMPANY, Appellant,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION; Image Sciences, Inc.; and Thomas Kendra, Individually, Appellees.
No. 04-95-00196-CV.
Court of Appeals of Texas, San Antonio.
October 9, 1996.
Rehearing Overruled November 12, 1996.
Joseph D. Jamail, Frank Staggs, Jamail & Kolius, Houston, John S. McEldowney, Andrew J. Mytelka, Scott D. Daniel, Greer, Herz & Adams, L.L.P., Stephen R. Lewis, Jr., Lewis & Williams, L.L.P., Galveston, for appellant.
George W. Vie, III, Jack C. Brock, Mills, Shirley, Eckel & Bassett, L.L.P., Galveston, Evan R. Chesler, Cravath, Swaine & Moore, New York City, Scott L. Davis, Peter S. Vogel, Kimberly M. Robinson, Cynthia Hollingsworth, Gardere & Wynne, L.L.P., Dallas, Russell G. Burwell, Burwell, Enos & Baron, P.C., Texas City, for appellees.
Before STONE, DUNCAN and JOHN G. HILL,[1] JJ.
HILL, Justice (Assigned).
American National Insurance Company appeals from a summary judgment dismissing certain tort actions that it brought against International Business Machines Corporation, Thomas Kendra, an employee of IBM, and Image Services, Inc., the appellees. American National brought a breach of contract action against the appellees arising out of two contracts between itself and IBM, with Image serving as a subcontractor under the second contract. American National also sought damages for fraud and certain other torts. The trial court granted the appellees' motions for partial summary judgment and dismissed American National's tort actions. After those tort actions were severed from the actions based upon breach of contract, American National brought this appeal. It contends in four points of error that the trial court erred: (1) in granting summary judgment dismissing its causes of action for negligence and gross negligence, fraud, and negligent misrepresentation; (2) in granting summary judgment dismissing its tort causes of action because the appellees *686 failed to present any summary judgment evidence or otherwise meet their summary judgment burden of proof; (3) in granting summary judgment dismissing its causes of action for negligence and gross negligence because there is no absolute bar against maintaining a tort action against a party to a contract; and (4) in granting summary judgment dismissing American National's causes of action for fraud and negligent misrepresentation, because there is no absolute bar against maintaining such actions against a party to a contract.
We reverse the summary judgment as it relates to American National's causes of action for fraud against IBM and Image, including allegations that they never intended to perform under the contract, and we affirm the summary judgment as it relates to American National's other tort causes of action, for reasons set forth in this opinion.
American National urges in its four points of error that the trial court erred in granting partial summary judgment as to the tort causes of action that it brought against the appellees.
American National is an insurance company with several divisions, including health, accident and life. In its petition, American National alleged, among other things, that it contracted with IBM for the performance of an image study to assess the need for, feasibility of, size and cost of, and benefits of an advanced computer image processing system. It alleged that subsequently, based upon representations of IBM, Kendra, and Image, it entered into a second contract by which it agreed to purchase certain hardware, software, and services necessary for its image printing requirements. It alleged that the appellees made certain misrepresentations of fact and that it relied upon those representations. American National alleged that it was forced to replace some of the IBM equipment that it purchased pursuant to the contract, at a cost of $4.242 million; to purchase additional direct access storage devices and additional related expenses in excess of $2.234 million, and to purchase additional optical storage units and related expenses in excess of $4.152 million. These figures total approximately $10.628 million. In its breach of contract action against IBM, American National alleged damages of $14.065 million for the purchase of substitute goods. It did not allege a specific figure with respect to its breach of contract action against Image.
IBM and Kendra brought their motion for partial summary judgment, asking the trial court to dismiss American National's tort causes of action because American National could not recover against them on its tort actions since its claim did not meet the two-part test set down by the Texas Supreme Court in Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493, 494-95 (Tex. 1991), and Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 617-18 (Tex.1986). Image brought a similar motion based upon the same theory.
The appellees had the burden of showing that there is no genuine issue of fact and that they are entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co. Inc., 690 S.W.2d 546, 548-49 (Tex.1985). Since these motions are based solely upon the allegations in American National's petition, we must accept each of its allegations as true. Cronen v. City of Pasadena, 835 S.W.2d 206, 210 (Tex.App.Houston [1st Dist.] 1992, no writ), overruled on other grounds, Lewis v. Blake, 876 S.W.2d 314, 315 (Tex.1994).
American National's claims against the appellees are based in part upon its contracts with IBM. The appellees claim that American National has no independent tort causes of action against them. In a case brought on the theory of the negligent performance of a contract, the Texas Supreme Court established a two-part test in determining whether a claim based upon a contract may also give rise to independent tort causes of action. DeLanney, 809 S.W.2d at 494-95. First, the court should examine whether the liability asserted arose solely as a result of a contractual duty or out of an independent obligation imposed by law. Id. Second, the court should examine whether the injury asserted is other than an economic loss to the subject of the contract. Id. at 494-95. Earlier, in the case of Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617 (Tex. 1986), the court said that in determining *687 whether there is a tort action, a breach of contract action, or both, the nature of the injury most often determines which duty or duties are breached. Id. at 618. The court indicated that when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. Id.
We will first discuss American National's claims of fraud. Among other things, American National claims that IBM and Image have made fraudulent statements, indicating that they entered the contract with no intention of performing that contract. Since DeLanney, the Texas Supreme Court has held that "[a]s a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp., 823 S.W.2d 591, 597 (Tex.1992) (citations omitted).
IBM urges that DeLanney applies and that American National's allegations, if true, do not meet either prong of the two-part test set forth in that opinion. As previously stated, the first prong is that the alleged tort must arise out of an independent obligation imposed by law rather than solely as a result of a contractual duty. It is apparent that the duty not to fraudulently induce one into a contract that one has no intention of performing does not arise from the contract subsequently entered into. Therefore, if DeLanney applies, then we must conclude, based upon Crim, that an allegation of fraud such as made here by American National meets that test. A conclusion that it does not meet the test is inconsistent with logic and with the Supreme Court's holding in Crim to which we have just referred. If such an allegation does not meet the first prong of the DeLanney test, we must conclude, based upon Crim, that DeLanney does not apply to such an allegation of fraud.
The second prong of the DeLanney test is whether there is a loss other than an economic loss to the subject of the contract. One court of appeals has held that DeLanney and Jim Walter Homes do not apply when the tort accompanying the contract is an action for fraud. Matthews v. AmWest Sav. Ass'n, 825 S.W.2d 552, 554 (Tex.App.Beaumont 1992, writ denied). Another court of appeals has indicated that at least the second prong of DeLanney and the rule in Jim Walter Homes are not applicable in cases involving fraud in the inducement of a contract where one enters into a contract with no intention of performing the contract. Schindler v. Austwell Farmers Coop., 829 S.W.2d 283, 291 (Tex.App.Corpus Christi), modified on other grounds, 841 S.W.2d 853 (Tex.1992).
One basis for the court's holding that it is not applicable is that the general rule that contractual remedies are limited to compensatory damages only, regardless of the culpable mental state of the breaching party, should not be extended to those who seek to fraudulently induce others into entering contracts that they have no intention of performing. Id. at 291. The other basis is that such a holding would virtually eliminate the tort of fraudulent misrepresentation in the procurement of a contract, a tort discussed in Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex.1986). Schindler, 829 S.W.2d at 291. In Spoljaric, the Texas Supreme Court stated that a promise to do an act in the future is actionable fraud when made with the intention, design, and purpose of deceiving and with no intention of performing the act. Spoljaric, 708 S.W.2d at 434. As previously noted, to apply the second prong of DeLanney to this tort would result in its virtual elimination. We do not believe that the Texas Supreme Court intended such a result when it decided Jim Walter Homes and DeLanney. See Peco Constr. Co. v. Guajardo, 919 S.W.2d 736, 739, n. 4 (Tex. App.San Antonio 1996, writ denied).
The dissent, in a very thoughtful and scholarly opinion, raises the issue of whether we, as a transferee court, are to apply the precedent of the transferring court or are to apply our own precedent. We believe that the answer is that we are not to blindly apply either, but are to reach our best conclusion as to what the law of the State of Texas is on this issue.
*688 The dissent refers to two cases, River Consulting, Inc. v. Sullivan, 848 S.W.2d 165 (Tex.App.Houston [1st Dist.] 1992, writ denied) and Hebisen v. Nassau Dev. Co., 754 S.W.2d 345 (Tex.App.Houston [14th Dist.] 1988, writ denied), both of which are cited by the appellees. We agree with the dissent that our opinion is inconsistent with these authorities. In both cases the court applied DeLanney, Jim Walter Homes, or both, to cases involving allegations of fraud in the inducement of contracts with no intention of performing as agreed. River Consulting, Inc., 848 S.W.2d at 170; Hebisen, 754 S.W.2d at 348. In neither case was there any significant discussion as to whether these authorities should be applicable in such a case. The theory of our law is that the State of Texas has but one law on any given subject, and that the law is as proclaimed by the courts of appeals and finally, in civil cases, by the Texas Supreme Court.
This theory acknowledges that there may be differences of opinion among the courts of appeals as to what that law is. The remedy for such conflicts or errors is an appeal to the Texas Supreme Court. TEX. GOV'T CODE ANN. § 22.001(a)(2)(6) (Vernon 1988).
Conflicts of law rules make sense when applied to separate sovereigns, whether nations or sovereign states, because in those instances there really can be conflicts in the law from one sovereign state or nation to the other. Where, however, there is only one sovereign, a court of appeals' duty is to decide and apply the law of that sovereign, not to ascertain the law as stated in a given district, whether its own or the district from which a case has been transferred. The State of Texas consists of only one sovereign state, not fourteen.
We acknowledge that there can be problems caused by the fact that Texas is such a large and diverse state, that we have fourteen courts of appeals districts, and that cases are transferred from one of those districts to other districts where the justices' views of what the law of Texas is may differ from the justices of the court from which the case arose. We believe, however, that the answer to those difficulties lies in an appeal to the Texas Supreme Court, in civil cases, or to the Texas Court of Criminal Appeals, in criminal cases, rather than in an effort on our part to be parochial in our application of the law to the facts presented us.
The dissent's conclusion that the "one sovereign" theory is somehow belied by the conflicts that arise among the courts of appeals makes logical sense only if one assumes that courts of appeals are somehow deemed infallible under that theory. Rather, the right of final appellate review from courts of appeal to the Texas Supreme Court or to the Texas Court of Criminal Appeals is based upon the premise that the intermediate appellate courts can and do err in reaching their conclusions as to what Texas law is.
The dissent's real argument is that we should choose to follow someone else's view of what Texas law is, rather than our own, because the Texas Supreme Court, for whatever reason, cannot readily resolve conflicts among the courts of appeals.
As noted by the dissent itself, this approach has been entirely rejected in the federal courts. We can find no basis for adopting it in Texas.
The arguments of the appellees are based upon the premise that the second prong of DeLanney and the holding in Jim Walter Homes are applicable to cases of fraudulent inducement to enter a contract when made with no intention of performing the contract. There are other courts of appeals that have applied these principles in fraud cases. These include Grace Petroleum Corp. v. Williamson, 906 S.W.2d 66, 69 (Tex.App.Tyler 1995, no writ); Parker v. Parker, 897 S.W.2d 918, 924 (Tex.App.Fort Worth 1995, writ denied); Leach v. Conoco, Inc., 892 S.W.2d 954, 960 (Tex.App.Houston [1st Dist.] 1995, writ dism'd w.o.j.); Harrison v. Bass Enter. Prod. Co., 888 S.W.2d 532, 536 (Tex.App. Corpus Christi 1994, no writ); Collins v. Allied Pharmacy Mgmt., 871 S.W.2d 929, 936 (Tex.App.Houston [14th Dist.] 1994, no writ); Central Sav. & Loan Ass'n v. Stemmons Northwest Bank N.A., 848 S.W.2d 232, 240-41 (Tex.App.Dallas 1992, no writ); and Airborne Freight Corp., Inc. v. C.R. Lee Enter., Inc., 847 S.W.2d 289, 296 (Tex.App.El Paso 1992, writ denied).
*689 In these cases the exact nature of the fraud is not always clear. Some of the cases are distinguishable because they do not involve allegations or evidence of fraudulent inducement to enter a contract where the fraudulent party had no intention of performing that contract. While one of these cases discusses the issue with reference to a situation where the fraudulent party has no intention of performing the contract, the opinion presumes, without significant discussion, that Jim Walter Homes is applicable to such cases. Ironically, the authority for the opinion's conclusion that one must allege and prove distinct actual damages attributable to the fraud and not to the breach of contract for the fraud claim to survive is Schindler, 829 S.W.2d at 290. See also Central Sav. and Loan Ass'n., 848 S.W.2d at 240. As we have noted, Schindler stands for the opposite proposition, that the rule in Jim Walter Homes does not apply to cases in which the tort is fraudulent inducement to contract with no intention of performing the contract. None of the cases cited by the appellees involves any significant discussion of the issue as to whether the principles in DeLanney and Jim Walter Homes are applicable to cases of this nature. To the extent that any of these cases hold that Jim Walter Homes or the second prong of DeLanney applies to cases involving fraudulent inducement to enter a contract where the fraudulent party had no intention of performing the contract, we decline to adopt those holdings for the reasons that we have stated.
The appellees rely on two other Texas Supreme Court cases, Texas Nat. Bank v. Karnes, 717 S.W.2d 901, 903 (Tex.1986), and Bellefonte Underwriters Ins. Co. v. Brown, 704 S.W.2d 742, 745 (Tex.1986), both of which state that one may not recover exemplary damages where there were actual damages for breach of contract but no actual damages for the tort that was proved. We find both of those authorities to also be distinguishable because neither involved the fraudulent inducement to enter a contract where the fraudulent party had no intention of performing the contract.
This court has previously held that one could not recover damages for fraud where one made representations that it never had an intention to fulfill, where the accompanying contract is barred by the statute of frauds. Collins v. McCombs, 511 S.W.2d 745, 747 (Tex.Civ.App.San Antonio 1974, writ ref'd n.r.e.). We find this case to be distinguishable because the statute of frauds is not involved in the case at bar.
American National conceded at trial that its other tort actions were precluded by its breach of contract suit. We sustain American National's points of error as they relate to its causes of action for fraud as to IBM and Image, including the allegations that they never intended to perform under the contract, and we overrule those same points of error as they relate to American National's other tort causes of action.
We reverse the summary judgment as it relates to American National's claims for fraud as to IBM and Image, including the allegations that they never intended to perform under the contract, and we affirm the summary judgment as it relates to American National's other tort causes of action. The cause is remanded to the trial court for further proceedings consistent with this opinion.
DUNCAN, Justice, concurring and dissenting.
I join the majority in affirming the summary judgment against ANICO on its negligence, gross negligence, and negligent misrepresentation claims. But I must respectfully dissent from the majority's reversal of the summary judgment on ANICO's fraud claimsnot because I disagree with the statements of law set forth in the majority's opinion, because I do not. Rather, I dissent because I believe the law governing this appeal is that enunciated by the First Court of Appeals, and that law clearly mandates affirmance of the summary judgment on ANICO's fraud claims.

FACTS
This case, and therefore IBM and Image's motions for summary judgment, were filed and "tried" in the 56th Judicial District Court of Galveston County, Texas. The motions sought summary judgment on ANICO's tort causes of action on the ground that *690 ANICO had not pleaded tort damages independent of its claimed breach of contract damages. At the hearing on IBM's motion, the trial court preliminarily agreed, stating, "I think a contract case, breach of contract is what we have got, pure and simple.... I think this is a contract case. Damages are contract damages." At a later hearing, the trial court granted summary judgments in favor of IBM and Image on all of their tort claims. ANICO appealed.
Initially, the courts having potential jurisdiction over ANICO's appeal were the First and Fourteenth Courts of Appeals in Houston, Texas. See TEX. GOV'T CODE ANN. § 22.201(b), (o) (Vernon 1988). Pursuant to statute, the trial court clerk randomly assigned ANICO's appeal to the First Court of Appeals. See id. § 22.202(h). It was, therefore, in the First Court of Appeals that the transcript and ANICO's brief were filed. Subsequently, however, the clerk of the First Court of Appeals notified the parties' counsel that ANICO's appeal had been transferred to this court by order of the Supreme Court of Texas. See id. § 73.001.
In the First and Fourteenth Courts of Appeals, it is now well established that a plaintiff who pleads a benefit-of-the-bargain measure of damages does not plead a cause of action sounding in tort; this rule applies even when the plaintiff pleads fraudulent inducement. See, e.g., River Consulting, Inc. v. Sullivan, 848 S.W.2d 165, 170 (Tex.App. Houston [1st Dist.] 1992, writ denied); Hebisen v. Nassau Dev. Co., 754 S.W.2d 345, 348 (Tex.App.Houston [14th Dist.] 1988, writ denied). In this court, on the other hand, the pleaded measure of damages is not dispositive of the contort issue. See Peco Constr. Co. v. Guajardo, 919 S.W.2d 736, 739 & n. 4 (Tex.App.San Antonio 1996, writ denied). The supreme court has not yet resolved this conflict among the courts of appeals.

WHOSE LAW GOVERNS?
In my view, this appeal presents a conflict of laws issue between the law of two coordinate courts. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 2, cmt. c (1971) (recognizing that "intrastate conflicts" arising out of the existence of territorial divisions, each with its "own separate law and courts," may "give[] rise to problems analogous to those dealt with in [the restatement]"). While individual judges have recognized a conflict of laws issue in the transfer context,[2] no court has enunciated choice of law rules with which to resolve such a conflict.[3]
*691 This silence may be attributable to what University of Houston Law Professor Robert Ragazzo has called, in his treatment of federal intercircuit conflicts, the "myth of uniformity." Robert Ragazzo, Transfer and Choice of Federal Law: The Appellate Model, 93 MICH. L. REV. 703, 736 (1995). Adherents of Professor Ragazzo's "myth of uniformity" hold that a choice of law question in the context of the federal circuit courts of appealsand other similar courtsis "a logical nonsequitur" because the law "is the creation of a single sovereign and ..., therefore, uniform in theory." See id. This theory is of course belied by reality, as the abundance of conflicts among the Texas courts of appeals demonstrates.[4] In my view, a myth however attractivecannot and should not justify failing to recognize, and fashion a rule for resolving, the conflicts that inevitably arise between the intermediate appellate courts within a system.[5]
Once the myth of uniformity is discarded, the question becomes what, if anything, to do about intrasystem conflicts. At one time, the State of California tried to resolve its intrastate conflicts problem by mandating that the first appellate decision on an issue bound the entire state. See Note, Securing Uniformity *692 in National Law: A Proposal for National Stare Decisis in the Courts of Appeals, 87 Yale L.J. 1219, 1232 & n. 83 (1978). I do not, however, advocate such a rule and believe it was wisely abandoned in California. See JON B. EISENBERG ET AL., CALIFORNIA PRACTICE GUIDE: CIVIL APPEALS & WRITS 14:193.1 (1995). Instead, I believe we should adopt a conflict of laws rule requiring transferee courts to apply the law of the transferring court, as suggested by traditional conflict of laws analysis and as Professor Ragazzo has advocated for the federal circuit courts of appeals in similar, temporary transfer situations.

Traditional Conflict of Laws Analysis
The usual principles underlying choice of law rules are relatively simple and well-established. A statutory directive naturally takes precedence. Restatement (Second) of Conflict of Laws § 6(1) (1971). In the absence of a statutory directive, as in this case, the relevant factors include:
(1) the needs of the interstate and international systems;
(2) the forum's relevant policies;
(3) other interested states' relevant policies and the relative interests of those states in the determination of the particular issue;
(4) protection of the parties' justified expectations;
(5) the basic policies underlying the particular field of law involved;
(6) certainty, predictability, and uniformity of result; and
(7) ease in determination and application of the law to be applied.
Id. In the intrastate transfer context, these factors can be boiled down to two basic concerns. First, the choice of law rules must serve the needs of the intrastate transfer system. Second, the choice of law rules should further legitimate policies and interests. I believe this case demonstrates that in the transfer context the pertinent factors are either neutral or weigh heavily in favor of applying the law of the transferring court.
1. The Needs of the Intrastate Transfer System
The overarching goal of the transfer system is and always has been to equalize the dockets of the courts of appeals. Compare Act of April 19, 1895, 24th Leg., R.S., ch. 53, § 1, 1895 Tex. Gen. Laws 79, 79-80 with TEX. GOV'T CODE ANN. § 73.001 (Vernon 1988). To serve this laudable goal of maximizing the efficiency of the courts of appeals, the transfer system must be convenient for the courts and also for the litigants and their counsel; it must be workable in a pragmatic sense; and it must be fair to the parties. In my view, each of these factors weighs in favor of applying the law of the transferring court.
a. Convenience
The legislature intends for the transfer system to be convenient for all concerned, as was first evidenced by a 1927 amendment requiring that transfer cases, as a general rule, be heard in the place where the transferring court usually sits. See Act of March 10, 1927, 40th Leg., R.S., ch. 76, §§ 1-2, 1927 Tex. Gen. Laws 115, 115-16. This convenience requirementfor both the courts and the litigants and their counselis still evident. See TEX. GOV'T CODE ANN. § 73.003(b), (c) (Vernon 1988) (requiring that transfer cases be heard in the place where the transferring court usually sits unless the parties agree otherwise or the receiving court is 35 miles or less from the transferring court). These provisions might very naturally be read as suggesting that a transferee court ought essentially to act as a panel of visiting judgesa function that would require application of the transferring court's law. At the very least, convenience appears to be a neutral factor in the conflicts analysis, since we can as conveniently apply the contorts law established by the First and Fourteenth Courts of Appeals as we can our own.
b. Workability
The transfer system must also be workable in a pragmatic sense from the perspective of the courts and the litigants. For instance, for many years the transfer statute required that the cases to be transferred be selected from the cases appealed from counties nearest *693 the receiving court. See Act of March 10, 1909, 31st Leg., R.S., ch. 42, § 1, 1909 Tex. Gen. Laws 88, 88; Act of March 10, 1927, 40th Leg., R.S., ch. 76, § 1, 1927 Tex. Gen. Laws 115, 116. This requirement proved unworkable, however, and was repealed in 1933. See In re Transfer of Causes Between Courts of Civil Appeals, 103 Tex. 127, 124 S.W. 622, 623 (1910) (holding that proximity requirement produced a result "not contemplated by the gentlemen who framed the act"); Act of May 18, 1933, 43rd Leg., R.S., ch. 151, §§ 1-2, 1933 Tex. Gen. Laws 380, 380-81 (repealing notice requirement). For the same reason, a complicated notice system between the transferring and receiving courts was short-lived. Compare Act of March 10, 1927, 40th Leg., R.S., ch. 76, § 1, 1927 Tex. Gen. Laws 115, 116 with Act of June 6, 1927, 40th Leg., 1st C.S., ch. 51, § 1, 1927 Tex. Gen. Laws 148, 148-49. This case demonstrates that a choice of law rule that permits the receiving court to apply its own law is simply not workable.
The parties and the trial court "tried" this case under the law enunciated by the Houston Courts of Appeals. IBM's counsel thus briefed and argued to the trial court the "controlling Fourteenth District authority":
There is not one decision by the Court of Appeals to the 14[th] District in Houston that we can find, and they have not cited one where the question of whether fraud, not negligence now, but fraud should be merged into a contract claim has been decided in any way other than to merge the two. There are four cases have addressed it and every one of the four cases resulted saying fraud ought to be merged.[6]
IBM's counsel also noted, both in its brief and at the hearing, that the case relied upon by ANICOSchindler v. Austwell Farmers Cooperative, 829 S.W.2d 283 (Tex.App.Corpus Christi 1992), aff'd as modified, 841 S.W.2d 853 (Tex.1992) (per curiam)expressly noted that the rule the Corpus Christi Court of Appeals was adopting "was a departure from the rule followed by the Fourteenth District Court of Appeals." Absent a fortuitous transfer, therefore, the result in this case, at least at the court of appeals level, was virtually certain. Indeed, it appears to have been on the strength and consistency of the Houston Courts of Appeals' contorts decisions that IBM moved for, and the trial court granted, summary judgment on ANICO's tort claims.
But if we apply the majority's reasoning and reverse the summary judgment on ANICO's fraud claims, the trial court will be bound by that reasoning on remand under the "law of the case" doctrine. See, e.g., Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex.1986); see also Thomas v. Collins, 860 S.W.2d 500, 502 (Tex.App.Houston [1st Dist.] 1993, writ denied) (El Paso Court of Appeals' reversal of trial court's dismissal on the pleadings in a transfer case was "law of the case" and binding on trial court on remand). Accordingly, even though neither of the Houston Courts of Appeals recognize a fraud cause of action in these circumstances, the trial court will be obligated to try ANICO's fraud claim.
Moreover, when that judgment is appealed, as it almost inevitably will be, this court will not hear that appeal absent another fortuitous transfer. See Varner v. Koons, 888 S.W.2d 511, 512-13 (Tex.App.El Paso 1994, no writ) (receiving court has no jurisdiction over ancillary proceeding); Smith v. City Nat'l Bank, 132 S.W. 527, 528 (Tex.Civ. App.Texarkana 1910, no writ) (once receiving court decides appeal it loses all jurisdiction over the transferred case). Instead, the statistical odds indicate that the appeal will be heard by either the First or the Fourteenth Court of Appeals. But the majority's reasoning will also control the analysis in that court unless it determines that our ruling on ANICO's fraud claim was "clearly erroneous." See, e.g., Turboff v. Gertner, Aron & Ledet Inv., 840 S.W.2d 603, 608 (Tex.App.Corpus Christi 1992, writ dism'd) (in case transferred from the Fourteenth *694 Court of Appeals, Corpus Christi Court of Appeals bound by "law of the case" established in earlier appeal to the transferring court); see also Thomas, 860 S.W.2d at 502 (court need not reanalyze sufficiency of pleadings because El Paso Court of Appeals' ruling was law of the case). That is an untenable position in which to thrust courts of coordinate jurisdiction, which may not, as a general rule, "set aside, annul, or vacate an order made by another, or review causes confided to another (unless upon transfer)." Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1074 (1926). In short, to apply this court's interpretation of the law to a case tried in Galveston County under the law enunciated by the Houston Courts of Appeals is simply unworkable.
c. Fairness
The transfer system must be fair; otherwise, it will not only violate the fundamental principles upon which any judicial system rests, but it will also not achieve or maintain the general acceptance necessary to its success. And how can it be fair when IBM would win in the transferring court, while in the receiving court it loseswhen the sole purpose of the transfer is docket equalization, not the promotion of one court of appeals' view of the substantive law?
2. The Relevant Policies and Interests of the Transferring and Receiving Courts
In light of their uniform and consistent rulings on the contort issue, the Houston Courts of Appeals have clearly indicated the legitimate policies and interests they seek to further within the confines of their district, however much this court may disagree with them. This court, on the other hand, has absolutely no such long-term policy interest in this case. The transaction was not entered into or performed within this district; the case was not filed or "tried" within this district; and in all likelihood this court will not hear any further appeals following remand. Nor does this court have any need to enunciate what it believes to be the controlling law in the contort area, having so recently done so in Peco Construction, 919 S.W.2d at 739.
As demonstrated by the foregoing, all of the factors relevant to traditional conflict of laws analysis are either neutral or forcefully point to applying the law of the transferring court in situations involving intrastate conflicts among the courts of appeals. This is precisely the rule advocated by Professor Ragazzo for resolving the conflicts that arise in similar temporary transfers within the federal system.

The Federal Analogy
Two mechanisms exist for transferring a case from one federal district court to another.[7] The first, section 1404(a) of the Judicial Code, provides for a permanent transfer made "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C.A. § 1404(a) (1993). In these cases, when diversity is the basis for the court's jurisdiction, the law of the transferor court unquestionably applies. Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964); Ferens v. John Deere Co., 494 U.S. 516, 531, 110 S.Ct. 1274, 1284, 108 L.Ed.2d 443 (1990). However, the law of the transferee court applies in permanent transfers involving federal question jurisdiction. Ragazzo, 73 Mich. L. Rev. at 704-05.
When cases are transferred pursuant to the second transfer mechanism, the Multidistrict Litigation Act (MDL), the applicable law is not so clear. The MDL authorizes a national panel of judges, the Judicial Panel on Multidistrict Litigation, to consolidate cases filed in different districts but involving common questions of fact in a single district for pretrial proceedings. 28 U.S.C.A. § 1407(a), (d) (1993). After completion of the pretrial proceedings, the consolidated cases are remanded to their original districts. Id. § 1407(a). Before 1987, the federal courts universally applied the law of the transferor court in the consolidated cases. Ragazzo, 73 Mich. L. Rev. at 726-27 & nn. 154-57; see also DAVID F. HERR, MULTIDISTRICT LITIGATION: HANDLING CASES BEFORE *695 THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION § 9.8, at 210 (1986) ("[T]he transferee court must apply the substantive law of the transferor forum during coordinated or consolidated pretrial proceedings."); MANUAL FOR COMPLEX LITIGATION § 31.122, at 254 n. 25 (2d ed. 1985) ("The transferee judge is bound ... by the law that would apply in the transferor court...."). In 1987, however, the D.C. Circuit Court of Appeals upset this well-settled law by holding that transferee law applied. In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175-76 (D.C.Cir.1987). On appeal, the Supreme Court resolved the intercircuit conflict and thus mooted the conflicts issue. Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 135, 109 S.Ct. 1676, 1684, 104 L.Ed.2d 113 (1989).
Today, almost all federal court decisions follow In re Korean Air Lines in MDL transfers. Ragazzo, 93 Mich. L. Rev. at 705-06. However, the most recent edition of the Manual for Complex Litigation treats the conflicts issue as an open question. MANUAL FOR COMPLEX LITIGATION § 31.132, at 254 (3d ed.1995) (stating that "the court must consider whether to apply the law of its circuit or that of the transferor court"). Professor Ragazzo forcefully argues that the courts got it right the first timeapplying transferor law is the only sound solution both theoretically and pragmatically. Ragazzo, 93 Mich. L. Rev. at 770.
According to Ragazzo, the federal choice of law rule must logically turn on one dispositive factor: the "appellate model," which asks whether the transfer is permanent or temporary, because a case must be decided according to the law of the court that has "ultimate jurisdiction" over its outcome. See id. at 747. Thus, when the transfer is theoretically temporary,[8] so that all subsequent proceedings will be conducted within the transferring circuit, the law of the transferring circuit must govern. See id. If it does not, then upon remand the trial court will be bound by the "law of the case" doctrine to follow the transferee circuit's legal conclusions, leaving its own court of appeals two equally unacceptable alternatives on further appeal of the case: yield to the transferee court's findings and affirm or declare those findings "clearly erroneous" and reverse. See id. at 760-61. Both options are illogical and inefficient, and neither belongs in a fair, workable system of courts. See id. at 757-62. Therefore, Ragazzo argues, the law of the transferor court should govern all phases of a case that has been temporarily transferred to another district pursuant to section 1407. Id. at 762.
Section 1407 transfers closely resemble transfers between the Texas courts of appeals in several respects. First, like section 1407 transfers, intrastate transfers are made by a separate judicial arm acting at its discretion, not by the presiding court on a party's motion. Compare 28 U.S.C.A. § 1407(a) (1993) (judicial panel) with TEX. GOV'T.CODE ANN. § 73.001 (Vernon 1988) (supreme court). Second, like section 1407 transfers, intrastate transfers are generally invoked for the judiciary's convenience, not a party's. Compare 28 U.S.C.A. § 1407(a) (1993) (specifying "convenience" and "efficient conduct") with TEX. GOV'T CODE ANN. § 73.001 (Vernon 1988) (requiring "good cause"). Third, like section 1407, the Texas transfer statute expressly provides that the transfers they authorize are to be temporary, not permanent, and that each case is to be remanded for any further proceedings to its original district. Compare 28 U.S.C.A. § 1407(a) (1993) ("shall be remanded") with TEX. GOV'T CODE ANN. § 73.002(a) (Vernon 1988) ("to which it is returnable on appeal"). Finally, like section 1407, the current version of the Texas transfer statute does not require that the transferee court sit in a district in which the case might have been filed under standard jurisdiction and venue analysis. Compare 28 U.S.C.A. § 1407(a) (1993) (transfers may be made "to any district") (emphasis added) with TEX. GOV'T CODE ANN. § 73.002(a) (Vernon 1988) ("The court of appeals to which a case is transferred has jurisdiction of the case without regard to the district in *696 which the case was originally tried ....") (emphasis added).[9] Given these similarities, Ragazzo's intercircuit "appellate model" applies just as forcefully in the intrastate conflict context.

CONCLUSION
This appeal presents a conflict of laws issue that I believe should be recognized. If the traditional factors underlying choice of law rules are weighed, they point directly in favor of Ragazzo's "appellate model" and applying the law of the transferring court. I would do so and affirm the summary judgment on ANICO's fraud claims.
NOTES
[1] Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).
[2] Justice Larsen questioned the "vagaries of the present `docket equalization' system" in a concurring opinion joined by Chief Justice Barajas. Kaufman v. State, 901 S.W.2d 653, 656-57 (Tex. App.El Paso 1995, pet. ref'd) (Larsen, J., concurring). In a recent decision from the Texas Court of Criminal Appeals, Judge Baird criticized the majority opinion for providing "no guidance on when jurisdiction on transferred cases begins and ends." State v. Adams, 930 S.W.2d 88, 96 (Tex.Crim.App., 1996) (Baird, J., dissenting). In prior opinions, I have also raised this concern. See Gilchrist v. Bandera Elec. Cooperative, Inc., 924 S.W.2d 388, 400 (Tex.App.San Antonio 1996, writ filed) (Duncan, J., concurring and dissenting) (noting that majority opinion creates uncertainty in cases transferred to the Fourth Court of Appeals from other appellate jurisdictions); In the Matter of A.L.S., 915 S.W.2d 114, 117 (Tex.App.San Antonio 1996, no pet.) (Duncan, J., concurring) (noting that law of transferor and transferee courts was the same).
[3] The Texas Supreme Court avoided this issue when discussing jurisdictional conflicts caused by overlapping appellate jurisdictions. Miles v. Ford Motor Co., 914 S.W.2d 135, 139-40 (Tex. 1995) (per curiam) (addressing TEX. GOV'T CODE ANN. § 22.201 (Vernon 1988)). When disposing of transferred cases, some courts of appeals identify the transferred status but fail to discuss the applicable law. See, e.g., Harris County v. Walsweer, 930 S.W.2d 659, 662-63 nn. 1-2 (Tex. App.-Houston [1st Dist.], 1996, n.w.h.) (where prior appeals were decided by the Eleventh and Sixth Courts of Appeals, respectively); Beasley v. Peters, 870 S.W.2d 191, 192 n. 2 (Tex.App. Amarillo 1994, no writ). Most courts simply remain silent as to both the transferred status and the applicable law. See, e.g., Puga v. State, 916 S.W.2d 547 (Tex.App.San Antonio 1996, no pet.) (appeal from Dallas County decided by Fourth Court of Appeals); Bellinger v. Purcell, 914 S.W.2d 630 (Tex.App.San Antonio 1995, writ filed) (appeal from Harris County decided by Fourth Court of Appeals); Collins v. State, 901 S.W.2d 503 (Tex.App.Waco 1995, pet. ref'd) (appeal from Dallas County decided by Tenth Court of Appeals); Burden v. John Watson Landscape Illumination, Inc., 896 S.W.2d 253 (Tex. App.Eastland 1995, writ denied) (appeal from Dallas County decided by the Eleventh Court of Appeals); Butler v. State, 890 S.W.2d 951 (Tex. App.Waco 1995, pet. ref'd) (appeal from Harris County decided by Tenth Court of Appeals); Davis v. Dresser Indus., Inc., 800 S.W.2d 369 (Tex.App.Eastland 1990, writ denied) (appeal from Harris County decided by Eleventh Court of Appeals). These examples demonstrate the prevalence of published decisions potentially affected by a conflict of laws issue. See TEX.R.APP. P. 90(d) (listing among publication criteria the announcement of a new rule of law or the resolution of a conflict of law). The total number of decisions potentially affected is much higher than these examples suggest. See TEXAS JUDICIAL SYSTEM: ANNUAL REPORT FOR FISCAL YEAR 1995 at 123 (Office of Court Administration) (indicating that 97 civil appeals and 710 criminal appeals were transferred among the courts of appeals in fiscal year 1995 while 271 civil appeals and 649 criminal appeals were transferred in fiscal year 1994).
[4] See e.g., Blakeney v. State, 911 S.W.2d 508, 516 n. 5 (Tex.App.Austin 1995, no pet.) (declining to follow Second Court of Appeals' holding that evidence of homosexuality properly admissible in child sexual assault case); Carroll v. State, 911 S.W.2d 210, 222 (Tex.App.Austin 1995, no pet.) (declining to follow Fourth Court of Appeals' holding that criminal evidence obtained illegally by law enforcement officer inadmissible regardless of the violated statute's purpose); Blackwell v. Harris County, 909 S.W.2d 135, 139 (Tex. App.Houston [14th Dist.] 1995, writ denied) (declining to follow Fifth Court of Appeals' holding that presence of legal duty should not define "course of employment" in assessing worker's compensation eligibility and instead following Supreme Court of Virginia); Texas Dep't of Pub. Safety v. Raffaelli, 905 S.W.2d 773, 776 n. 2 (Tex.App.Texarkana 1995, no writ) (declining to follow Third Court of Appeals' holding that agency record may not be considered by court of appeals if omitted from the statement of facts, even if filed with the clerk pursuant to statute); Bellnoa v. City of Austin, 894 S.W.2d 821, 825 (Tex.App.Austin 1995, no writ) (declining to follow Thirteenth Court of Appeals' holding that sign displaying correct but negligently-raised speed limit gives rise to municipal liability under the Tort Claims Act).
[5] Intrastate conflicts are, of course, an inevitable by-product of Texas' appellate court structure with its process of discretionary review and its emphasis on the competency of each court of appeals' to interpret state law. See Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1074 (1926). The overloaded appellate dockets may explain why some conflicts take years to be resolved. See, e.g., E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 554 (Tex.1995) (resolving conflicts dating from 1986 about the admissibility of scientific evidence); Dresser Indus., Inc. v. Lee, 880 S.W.2d 750, 751 (Tex.1993) (resolving conflicts dating from 1987 in the admissibility of an employer's negligence in a worker's compensation case). Other examples demonstrate that conflicts may survive several years without resolution. Compare Moss v. State, 877 S.W.2d 895, 898 (Tex.App.Waco 1994, no writ) with Roberson v. State, 866 S.W.2d 259, 261 (Tex.App. Fort Worth 1993, no writ) (burden of proof on the appeal of a charge of racial discrimination in jury selection); State v. Hobbs, 824 S.W.2d 317, 319 (Tex.App.San Antonio 1992, pet. ref'd) with Rosalez v. State, 875 S.W.2d 705, 714-15 (Tex.App.Dallas 1993, pet. ref'd) and Carroll v. State, 911 S.W.2d at 222 (admissibility of evidence obtained illegally by a law enforcement officer and effect of the violated statute's purpose); Courtney v. University of Tex. Sys., 806 S.W.2d 277, 284 (Tex.App.Fort Worth 1991, writ denied) with Industrial Constr. Management v. DeSoto Indep. Sch. Dist., 785 S.W.2d 160, 163-64 (Tex.App.Dallas 1989, writ denied) (whether state waives sovereign immunity against contract claim when it enters contract); Central Tex. Hardware, Inc. v. First City, TexasBryan, N.A., 810 S.W.2d 234, 237 (Tex.App.Houston [14th Dist.] 1991, writ denied) with Briercroft Serv. Corp. v. De Los Santos, 776 S.W.2d 198, 206-08 (Tex.App.San Antonio 1988, writ denied) (circumstances under which borrower qualifies as "consumer" for purposes of DTPA action against lender).
[6] In its reply brief in the trial court, IBM cited Barbouti v. Munden, 866 S.W.2d 288 (Tex.App. Houston [14th Dist.] 1993, writ denied); Hebisen v. Nassau Dev. Co., 754 S.W.2d 345 (Tex.App. Houston [14th Dist.] 1988, writ denied); Allen v. Allen, 751 S.W.2d 567 (Tex.App.Houston [14th Dist.] 1988, writ denied); and Webber v. M.W. Kellogg Co., 720 S.W.2d 124 (Tex.App.Houston [14th Dist.] 1986, writ ref'd n.r.e.).
[7] Actually, a third mechanism exists, but it does not raise conflict of laws concerns. Ragazzo, 73 MICH. L. REV. at 704 n. 12 (discussing 28 U.S.C.A. § 1406(a) (1993)).
[8] In practice, according to recent estimates, only about 20% of § 1407 transfer cases are ever actually remanded back to their original courts. See Diana E. Murphy, Unified and Consolidated Complaints in Multidistrict Litigation, 132 F.R.D. 597, 603 & n. 3 (1991). Ragazzo challenges the importance of this statistic. Ragazzo, 93 MICH. L. REV. at 754-55.
[9] With respect to all four factors, the Texas counterpart to section 1404(a) is section 15.002(b) of the new venue statute, which provides for transfers that (1) are made by the presiding court on a party's motion, (2) are made for the moving party's convenience, (3) are made to another court of proper venue, and (4) are permanent, not temporary. TEX CIV. PRAC. & REM.CODE ANN. § 15.002(b) (Vernon Supp.1996); see also id. § 15.063 (Vernon 1986) (providing for consensual transfer and correction of improper venue).